**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GERALD FLOWERS

      Plaintiff,

vs.                                                                          No. Civ 09-569 JAP/DJS

LEA POWER PARTNERS, LLC, a Delaware
Corporation, COLORADO ENERGY
MANAGEMENT, LLC, a Colorado Corporation,
and GENOVA POWER SOLUTIONS, LLC, a
Delaware Corporation.

      Defendants

and

LEA POWER PARTNERS, LLC, a Delaware
Corporation, and COLORADO ENERGY
MANAGEMENT, LLC, a Colorado Corporation.

      Third-Party Plaintiffs,

vs.

AFCO STEEL, LLC, a Delaware Corporation,

      Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

On September 10, 2010 Third-Party Defendant AFCO Steel, LLC (AFCO) filed a Motion

For Summary Judgment (Doc. No. 106) and a Memorandum In Support Of Motion For

Summary Judgment (Doc. No. 107) (collectively Motion for Summary Judgment).  On October

4, 2010 Third-Party Plaintiffs Colorado Energy Management, LLC and Lea Power Partners,

LLC (collectively CEM) filed a Response To AFCO's Motion For Summary Judgment And

Memorandum In Support. (Doc. No. 114) (Response). AFCO filed a Reply (Doc. No. 117) on

1

October 14, 2010.  Having considered the parties arguments as well as the applicable law, the Court finds that AFCO's Motion for Summary Judgment should be granted in part and denied in part.

## BACKGROUND

On May 8, 2008, Plaintiff Gerald Flowers, a pipefitter employed by Turnaround Welding Services, LLC (TWS), fell approximately twenty-five feet while descending a fixed ladder at a power plant under construction in Hobbs, New Mexico.  Flowers suffered injuries as a result of his fall and, on June 9, 2009, Flowers filed a Complaint (Doc. No. 1) against CEM, the owners and operators of the power plant, as well as Genova Power Solutions, LLC, the developer of the plant site.  In his Complaint, Flowers asserted strict liability and negligence claims alleging that CEM and Genova negligently designed, developed, and manufactured the ladder from which Flowers fell.

CEM then filed Defendant/Third-Party Plaintiffs Lea Power Partners, LLC And Colorado Energy Management, LLC's Third-Party Complaints Against Turnaround Welding Services, AFCO Steel, LLC and Burns And Roe Enterprises, Inc. (Doc. No. 41) (Third-Party Complaint). CEM's Third-Party Complaint asserted claims against TWS, Flowers' employer, AFCO, the manufacturer of the ladder, and Burns and Roe Enterprises, Inc. (B&R), the company that designed the ladder.  CEM voluntarily dismissed its claims against B&R on February 16, 2010 and its claims against TWS on October 20, 2010.  *See* Doc. Nos. 60 and 122.  Thus, AFCO is the only remaining Third-Party Defendant.

In its Third-Party Complaint against AFCO, CEM alleged that "[i]f it is found that the ladder at issue was defective, Third-Party Defendant AFCO is liable to CEM . . . for all or part of [Flowers'] claims of strict liability against CEM . . . pursuant to the New Mexico doctrine of

2

strict products liability." Third-Party Complaint at 13. In addition, CEM asserted a common law indemnification claim against AFCO, as well as a claim for proportional indemnification and contribution, alleging that AFCO had a duty to properly manufacture the ladder and disclose any defects, that AFCO breached that duty, and that CEM was entitled to be indemnified by AFCO for any damages assessed against CEM.

In its Motion for Summary Judgment, AFCO asserts that because Flowers' Complaint alleges a claim for strict products liability based on a design defect, not a manufacturing defect, AFCO cannot be held liable for Flowers' injury. AFCO argues that it is entitled to summary judgment because while AFCO was responsible for manufacturing the ladder, AFCO was not responsible for the allegedly defective design as the ladder was designed by CEM through its agent, B&R. According to AFCO, a manufacturer cannot be held liable under the doctrine of strict products liability when it does not design the allegedly defective product. Motion for Summary Judgment at 11. In addition, AFCO argues that it is not required to indemnify CEM because AFCO did not design the alleged defect.

## DISCUSSION

### I. Compliance With Local Rules

#### A.        Rule 7.4(a)

AFCO filed its Motion for Summary Judgment on September 10, 2010. Under Local Rule 7.4(a), CEM's response was due "within fourteen (14) calendar days after service of the motion." D.N.M. LR-Civ. 7.4(a). CEM did not file its Response until October 4, 2010. Generally, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). AFCO urges the Court to disregard the arguments made in CEM's Response due to

3

CEM's failure to comply with the Local Rules. In response, CEM filed a Motion To Consider Late Response To AFCO's Motion For Summary Judgment (Doc. No. 119) in which CEM contends that it incorrectly calculated the due date of its response by relying on Fed. R. Civ. P. 56(c)(1)(B), which provides a party with twenty-one days to file a response. CEM urges the Court to consider CEM's untimely Response.

According to the Tenth Circuit Court of Appeals, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against a party." *Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002). Thus, while a party's failure to comply with a local rule can constitute a waiver of the right to respond or controvert facts asserted in a summary judgment motion, the Court still must determine whether the uncontroverted facts entitle the moving party to a judgment as a matter of law. *See id.* Because CEM's response was only a week late, and because the Court is required to determine whether summary judgment is appropriate even if CEM is deemed to have consented to AFCO's Motion for Summary Judgment, the Court will consider the arguments raised in CEM's response and will therefore grant CEM's Motion To Consider Late Response.

**B.    Rule 7.3(a)**

While AFCO strongly criticizes CEM's failure to comply with Rule 7.4, AFCO's Motion for Summary Judgment fails to comply with Rule 7.3(a) which requires that "[a] motion . . . must cite authority in support of the legal positions advanced." D.N.M.LR-Civ. 7.3(a). In its Motion for Summary Judgment, AFCO argues that under the doctrine of strict liability, AFCO cannot be held liable for a design defect when it did not design the product that it manufactured. AFCO does not, however, direct the Court to a single case, statute, or treatise that supports its position. Instead, AFCO only refers generally to "the doctrine of strict liability" without any

4

citation to any authority whatsoever.  In addition, while AFCO argues that CEM is not entitled to indemnification because AFCO was not negligent, AFCO again does not direct the Court to any authority in support of this proposition.[1]  Despite AFCO's failure to provide any authority in support of its position, the Court nonetheless addresses the arguments raised in AFCO's Motion for Summary Judgment.  However, the Court cautions all parties to strictly comply with the Local Rules of Civil Procedure.

## II.  Summary Judgment

Summary judgment is appropriate if the Court finds that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, the Court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (citation omitted). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Id.* (citation omitted). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). The parties do not dispute the material facts relevant to AFCO's Motion for Summary Judgment.  Rather, the parties disagree solely on whether AFCO is entitled to a judgment as a matter of law under the undisputed facts of the case.

---

[1] AFCO *does* cite one case in the indemnification section of its Motion for Summary Judgment.  However, that case is cited only for a general proposition regarding the purpose of indemnification and is not cited in support of the arguments made in AFCO's Motion for Summary Judgment.

The following undisputed facts are relevant to AFCO's Motion for Summary Judgment. Under an agreement with CEM to provide materials for the power station, AFCO was responsible for manufacturing the ladder at issue in this case.  AFCO, however, did not design the ladder. Instead, CEM contracted with B&R to design the ladder and B&R prepared design specifications for the ladder.  CEM then provided the specifications to AFCO which entered into an agreement with J.A. Free Jr. & Co. to prepare shop drawings of the ladder in accordance with the design specifications.  In December 2007, AFCO submitted the shop drawings to CEM and B&R.  The original shop drawings specified that the side rails of the ladder were to be made of bar stock.  B&R revised the original shop drawings by changing the side rails to angle iron and submitted the modified shop drawings to AFCO.  AFCO made the revisions required by B&R and submitted a new set of shop drawings reflecting the changes to CEM and B&R.  AFCO then fabricated the ladder in accordance with the design specifications and delivered it to the power station where it was installed by a contractor.

According to Flowers, the fall occurred because Flowers stepped on a conduit instead of a ladder rung and was unable to hold on to the side rails of the ladder because they were made of angle iron.  Flowers' expert, Jason T. English, has opined that the primary defect in the ladder was the use of angle iron for the ladder's handrails.  In addition, Flowers contends that other ladders would have a safety cage.  CEM and AFCO agree, however, that a cage is not required for the ladder and that the specifications do not call for a cage.  Because CEM agrees with AFCO that a cage was not required and that the conduit that Flowers allegedly stepped on was not in the specifications for the ladder, it appears that the only defect CEM alleges AFCO is liable for is the use of angle iron to construct the ladder's side rails.

6

A.      **New Mexico Products Liability**

AFCO contends that under New Mexico strict products liability law, AFCO cannot be held liable for manufacturing a defective product that it did not design.  As discussed above, AFCO does not direct the Court to a single case or statute, from New Mexico or from any other jurisdiction, to support its position that it cannot be held liable for the manufacture of a defective product that it did not design. Rather, AFCO only broadly argues that "[t]he doctrine of strict liability is not applicable to AFCO for this specific situation in which the manufacturer did not design the ladder and Plaintiff's claim is based on a design defect."  Motion for Summary Judgment at 11.  In its Response to AFCO's Motion for Summary Judgment, CEM argues that under New Mexico law, a manufacturer of a product *can* be held strictly liable even if the manufacturer was not responsible for the design of a defective product.  CEM notes that one of the purposes of strict products liability is to "provid[e] relief against the manufacturer who—while perhaps innocent of negligence—cast the defective product into the stream of commerce and profited thereby."  *Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 377 (N.M. 1995).

Under New Mexico law, "[a]ll parties in the chain of distribution of a defective product are strictly liable" for any injury caused by the product.  *Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 10, 131 N.M. 87, 33 P.3d 638.  "The purpose behind the strict products liability doctrine is to allow an injured user or consumer to recover against a supplier or manufacturer without the requirement of proving negligence." *Id.* at ¶ 12 (quotation marks omitted).  A supplier or manufacturer of a product will be liable for any harm caused by the product even if "all possible care has been used by the supplier in putting the product on the market."  *Id.* at ¶ 13.  Thus, whether AFCO was responsible for the alleged defect is irrelevant under the strict products

liability doctrine because "[s]trict liability focuses [only] on the *product*," not on the

manufacturer's conduct or what the manufacturer knew or should have known.  *Brooks*, 120

N.M. at 379. Because AFCO manufactured the ladder, it is in the chain of distribution of the

product and can therefore be held strictly liable for any injury caused by the allegedly defective

ladder.

    While New Mexico law clearly permits an injured party to hold a manufacturer liable for

a defective product even if the manufacturer did not design the product, AFCO argues for the

first time in its Reply that CEM cannot hold AFCO strictly liable for the alleged design defect

because the strict products liability doctrine is intended only to protect an injured party, not

another party within the chain of distribution.  CEM did not, however, assert a strict liability

claim against AFCO.  Instead, CEM asserts in its Third-Party Complaint that if Flowers is

successful in his strict products liability claim against CEM, CEM is "entitled to indemnification

from . . . AFCO pursuant to the New Mexico doctrine of strict products liability."  Third-Party

Complaint at 13.  Thus, CEM is not seeking to hold AFCO liable for the defective design of the

ladder, but is instead seeking to have AFCO indemnify CEM if Flowers prevails on his strict

liability claim against CEM.  Because CEM's claim against AFCO for strict liability only raises

a question as to whether AFCO is required to indemnify CEM, and because the analysis for

indemnification under strict liability and ordinary negligence is the same under New Mexico

law, the Court discusses the issue together with AFCO's assertion that it is entitled to summary

judgment on CEM's indemnification claims.  *See Budget Rent-A-Car Systems, Inc. v.

Bridgestone*, 2009-NMCA-013, ¶12, 145 N.M. 623, 203 P.3d 154 (noting that "[t]raditional

indemnification applies in negligence, breach of warranty, and strict liability cases where the

indemnitee is in the chain of supply of a product").

**B. Indemnification**

In addition to CEM's allegation in its Third-Party Complaint that it is entitled to indemnification under the strict products liability doctrine, CEM also argues that it is entitled to indemnification under New Mexico common law.  CEM contends that its negligence, if any, is passive and that CEM is therefore entitled to be indemnified by AFCO for any damages arising from AFCO's negligence. CEM also alleges in the alternative that it is either entitled to be proportionally indemnified by AFCO or that it is entitled to contribution from AFCO. In its Motion for Summary Judgment, AFCO argues that CEM is not entitled to indemnification because CEM was actively negligent due to its knowledge of the changes B&R made to the design specifications for the ladder.

**1. Traditional and Strict Liability Indemnification**

 "Traditional indemnification provides an indemnitee, who has been held liable for damages, the right to be made whole by a third party, such as a primary wrongdoer." *Budget Rent-A-Car Systems,* 2009-NMCA-013, ¶12. The doctrine "grants to one who is held liable an all-or-nothing right of recovery from a third party." *Id.*  Under the doctrine, "a party who has been held liable for a wrong but whose conduct in causing the harm was 'passive' can recover from a party who was 'actively' at fault in causing the harm." *Id.*  "Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor." *In re Consolidated Vista Hills Retaining Wall Litigation*, 119 N.M. 542, 546, 893 P.2d 438, 442 (1995) ("*Amrep*"). A party who was actively at fault cannot recover anything under traditional indemnification because "[i]t would be improper to allow full indemnification in strict liability when the party seeking indemnification is partially at fault." *Id.* at 549. P.2d at 445.  Thus, "in all strict liability cases the conduct of the

party seeking traditional indemnification must have been passive before that party may recover full indemnification from the manufacturer of a defective product." *Id.*

> Under New Mexico law,
>
> [a]ctive conduct is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had a duty to perform. Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another. Passive conduct may also occur when a party is nothing more than the retailer in the chain of distribution of a product.

*Id.* at 547, P.2d at 443 (quotation marks and citations omitted). Where a party fails to discover and remedy a dangerous condition, the conduct of the party not discovering the dangerous condition is passive and that party is entitled to indemnification from the party that created the condition because "as between the two parties the courts have clearly seen the greater responsibility of the one who created the dangerous situation." *Id.* Where a party discovers a dangerous condition created by another but does nothing to remedy it, that party is actively negligent and "is not entitled to traditional indemnification from the one creating the condition because to do so would be to shift the whole burden of loss onto one tortfeasor from another whose improper conduct is fully as odious." *Id.* (quotation marks omitted).

In its Motion for Summary Judgment, AFCO contends that CEM's conduct was active and that it is therefore not entitled to indemnification. According to AFCO, CEM was actively negligent because, although CEM did not design the ladder, CEM's agent, B&R, designed the ladder and CEM had knowledge of the work performed by B&R. AFCO asserts that it's own conduct was only passive because "it did not perform the alleged negligent act of designing the ladder." Motion for Summary Judgment at 12. In its Response, CEM argues that it's conduct was passive, that AFCO's conduct was active, and that CEM is therefore entitled to

indemnification from AFCO.

If the jury were to conclude that the use of angle iron is a design defect, then whether AFCO can be required to indemnify CEM depends on whether the conduct of either party is found to be active or passive.  According to the undisputed facts of the case, AFCO submitted a shop drawing to B&R that indicated that bar stock was to be used for the side rails of the ladder. B&R then revised those drawings and requested that AFCO change the side rails to angle iron. AFCO made the changes requested by B&R and fabricated a ladder using angle iron for the side rail.  Viewing this evidence in the light most favorable to CEM, the party opposing summary judgment, the Court finds that a reasonable jury could conclude that AFCO knew or should have known that using angle iron created a dangerous condition and that AFCO failed to act to remedy that condition.  Thus, a reasonable jury could conclude that AFCO's conduct was active. Similarly, viewing the evidence in the light most favorable to CEM, a reasonable jury could conclude that CEM, as a party unfamiliar with the design and fabrication of ladders, was unaware that the angle iron created a dangerous condition and that CEM's conduct was therefore passive.  Alternatively, a reasonable jury could conclude that CEM merely failed to discover the allegedly dangerous condition created by using angle iron because there is no evidence that CEM actually was aware of the design changes requested by B&R.  Because a reasonable jury could determine that AFCO's conduct was active and that CEM's conduct was passive, the Court cannot conclude that AFCO is entitled to judgment as a matter of law.  Thus, summary judgment should be denied with respect to AFCO's assertion that CEM is not entitled to traditional indemnification.

**2.  Contribution and Proportional Indemnification**

New Mexico has adopted the doctrine of comparative fault which provides that "when

concurrent tortfeasors negligently cause a single, indivisible injury, the general rule is that each

tortfeasor is severally responsible for its own percentage of comparative fault for that injury."

*Payne v. Hall*, 2006-NMSC-029, ¶ 11, 139 N.M. 659, 137 P.3d 599 (emphasis omitted).  New

Mexico's adoption of comparative fault effectively abolished the doctrine of joint and several

liability under which "each tortfeasor is liable for the entire injury, regardless of proportional

fault, leaving it to the defendants to sort out among themselves individual responsibility based on

theories of proportional indemnification or contribution."  *Id.*  However, joint and several

liability still exists under certain statutorily defined circumstances, one of which is strict liability.

 *See* NMSA 1978, § 41-3A-1 (1987).  Where joint and several liability still applies, the party

who is held fully liable can seek contribution from the other tortfeasors.  *See id.*

Because Flowers has asserted a strict liability claim against CEM, CEM has a right to

seek contribution from AFCO or any other joint tortfeasor if CEM is held liable for the alleged

design defect. *See* NMSA 1978, § 41-3-2(A) (1987) (providing that "[t]he right of contribution

exists among joint tortfeasors"). In its Third-Party Complaint, CEM asserted a claim for

contribution against AFCO. AFCO does not argue that summary judgment should be granted on

this claim and, because the Court finds that a question of fact remains regarding each party's

respective liability for the allegedly defective design, summary judgment is not appropriate at

this time on CEM's claim for contribution against AFCO.

In addition to comparative negligence and contribution as means to apportion fault

amongst multiple tortfeasors, New Mexico also recognizes the doctrine of proportional

indemnification which, as its name suggests, allows a party found to be at fault to seek

indemnification from a third-party in proportion with that party's level of fault.  *See Amrep*, 119

N.M. at 552, 893 P.2d at 448.  The doctrine stems from New Mexico's adoption of comparative

fault and allows "a defendant who is otherwise denied apportionment of fault [to] seek partial recovery from another at fault."  *Id.* The doctrine is applied narrowly, however, and "need not apply when a factfinder makes a determination that a concurrent tortfeasor is proportionally liable to an injured party" or when the New Mexico Uniform Contribution Among Tortfeasors Act, NMSA 1978, §§ 41-3-1 to -8 "provides for proration of damages among joint tortfeasors." *Id.*  Thus, "proportional indemnification applies only when contribution or some other form of proration of fault among tortfeasors is not available," such as when a plaintiff chooses to sue under a cause of action that does not otherwise allow proration. *Id.* at 552-553.

Because joint and several liability, and thus contribution, expressly applies to strict products liability actions, proportional indemnification is not an available remedy for CEM to recover damages from AFCO in the event that CEM is held liable for the allegedly defective design of the ladder.  Thus, summary judgment should be granted with respect to CEM's claim for proportional indemnification.

IT IS ORDERED that CEM's Motion To Consider Late Response (Doc. No. 119) is GRANTED, AFCO's Motion For Summary Judgment (Doc. No. 106) is GRANTED with respect to CEM's claim for proportional indemnification and AFCO's Motion For Summary Judgment (Doc. No 106) is DENIED with respect to CEM's claim for traditional indemnification and contribution.

_____
SENIOR UNITED STATES DISTRICT JUDGE