**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GERALD FLOWERS

    Plaintiff,

vs.                                                                                              No. Civ 09-569 JAP/DJS

LEA POWER PARTNERS, LLC, a Delaware
Corporation, COLORADO ENERGY
MANAGEMENT, LLC, a Colorado Corporation,
J.A. FREE, JR. & COMPANY, AFCO STEEL, LLC,
GENERAL IRON & STEEL INC.,
BURNS & ROE ENTERPRISES, INC., MMR
CONSTRUCTORS, INC., and L.P.R. CONSTRUCTION
CO.,

    Defendants

and

LEA POWER PARTNERS, LLC, a Delaware
Corporation, and COLORADO ENERGY
MANAGEMENT, LLC, a Colorado Corporation.

    Third-Party Plaintiffs,

vs.

AFCO STEEL, LLC, a Delaware Corporation,

    Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

    Resolution of Defendant General Iron & Steel Inc.'s (General Iron) Motion for Summary

Judgment[1] requires the Court to determine whether it has personal jurisdiction over General Iron,

---

[1] General Iron filed a Motion for Summary Judgment or in the Alternative Motion to Compel Arbitration (Doc. No. 145) on February 21, 2011. Defendant AFCO Steel, LLC filed a Response (AFCO's Response) (Doc. No. 191) on June 6, 2011. Plaintiff Gerald Flowers also

a Colorado corporation that manufactured a ladder General Iron knew would ultimately be shipped to and installed in a New Mexico power plant. General Iron operates exclusively in Colorado, does not advertise in New Mexico, has never done business in New Mexico, did not contract with a New Mexico resident, and has no connection to New Mexico other than its knowledge that the ladder would ultimately be shipped here. The Court must determine from these facts whether General Iron has sufficient contacts with New Mexico that it should have anticipated being haled into court in New Mexico. Because the Court concludes that the sole fact that General Iron knew its ladder would ultimately end up in New Mexico is an insufficient contact with New Mexico to satisfy due process, summary judgment will be entered in General Iron's favor.

## BACKGROUND

On May 8, 2008, Plaintiff Gerald Flowers, a pipefitter employed by Turnaround Welding Services, LLC (TWS), fell approximately twenty-five feet while descending a fixed ladder at a power plant under construction in Hobbs, New Mexico. Flowers suffered injuries as a result of his fall. On June 9, 2009, Flowers filed a Complaint (Doc. No. 1) against Colorado Energy Management, LLC and Lea Power Partners, LLC (collectively CEM), the owners and operators of the power plant, as well as Genova Power Solutions, LLC,[2] the developer of the plant site. In his Complaint, Flowers asserted strict liability and negligence claims alleging that CEM and Genova negligently designed, developed, and manufactured the ladder from which Flowers fell

---

filed a Response (Flower's Response) (Doc. No. 193) on June 6, 2011. General Iron filed its Reply (Doc. No. 198) on June 21, 2011.

[2]The Court granted summary judgment in Genova Power Solutions, LLC's favor on November 9, 2010. *See* Doc. Nos. 128 and 129.

and that CEM and Genova negligently managed and supervised the construction of the plant.

CEM then filed a Third-Party Complaint (Doc. No. 41) against Turnaround Welding Services[3], Flowers' employer, AFCO Steel, LLC (AFCO), the company that provided the ladder to CEM, and Burns And Roe Enterprises, Inc. (B&R),[4] the company that designed the ladder. AFCO responded by filing a Fourth-Party Complaint (Doc. No. 81) against J.A. Free Jr. & Company, Inc., the company that provided the shop drawings and design specifications for the ladder, and General Iron & Steel, Inc., the company that fabricated the ladder.

On June 2, 2010 General Iron filed a Motion for Summary Judgment (Doc. No. 88) (General Iron's First Motion for Summary Judgment) asserting that the Court lacked personal jurisdiction over General Iron.  Shortly thereafter, AFCO filed a Stipulation of Dismissal Without Prejudice of the Fourth Party Complaint (Doc. No. 99) dismissing its claims against General Iron and J.A. Free. According to the Stipulation of Dismissal, counsel for General Iron concurred with AFCO's request that its Fourth Party Complaint be dismissed without prejudice. *See id.*

On January 6, 2011, the Court entered an order permitting Flowers to file an amended complaint, *see* Doc. No. 139, and on January 28, 2011 Flowers filed his First Amended Complaint (Doc. No. 142).  In his First Amended Complaint, Flowers added claims against AFCO, General Iron, J.A. Free, Burns & Roe, L.P.R. Construction Co. (LPR), the company that installed the ladder, and MMR Constructors Inc. (MMR), the company that installed the

---

[3]CEM voluntarily dismissed its claims against Turnaround Welding Services on October 20, 2010.  *See* Doc. Nos. 122 and 125.

[4]CEM voluntarily dismissed its claims against Burns and Roe Enterprises on February 16, 2010. *See* Doc No. 60.

electrical conduits behind the ladder. After being brought back into the case as a defendant, General Iron filed its Motion for Summary Judgment.

In its Motion for Summary Judgment, General Iron argues that the Court lacks personal jurisdiction over General Iron because General Iron is a Colorado corporation that does business exclusively in Colorado.  General Iron contends that it has never advertised in New Mexico, has never attended trade shows in New Mexico or nationally, has never entered into contracts with New Mexico residents, has never performed work for New Mexico residents, has never solicited business from New Mexico residents, and has never shipped products to New Mexico. General Iron notes that AFCO, a Delaware corporation, contacted General Iron in Colorado, provided design specifications to General Iron in Colorado, and asked that the ladder be delivered to AFCO in Colorado.  General Iron then fabricated the ladder in Colorado and shipped the ladder to the Colorado location that AFCO had specified. Because all its conduct related to the ladder occurred in Colorado, General Iron contends that it lacks the minimum contacts with New Mexico that are necessary for this Court to properly exercise personal jurisdiction over General Iron.  AFCO, on the other hand, argues that the minimum contacts requirement has been met because General Iron was aware that the ladder would ultimately be shipped to New Mexico and installed in New Mexico.  Flowers joined in AFCO's Response.

In addition to arguing that the Court lacks personal jurisdiction, General Iron also argues that judicial estoppel precluded Flowers from filing suit against General Iron because Flowers stipulated to AFCO's dismissal of its Fourth Party Complaint against General Iron.  Because the Court ultimtately concludes that it lacks personal jurisdiction over General Iron, the Court will not address General Iron's judicial estoppel argument.

## DISCUSSION

### A. Standard of Review

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue" and "[a]n issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011). In reviewing a motion for summary judgment, the Court views "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (citation omitted). If, after viewing the evidence in the light most favorable to the non-movant, the Court concludes that the movant is entitled to a judgment as a matter of law, then summary judgment must be entered in the movant's favor. *See Thomas*, 631 F.3d at 1160.

### B. Disputed Issues of Fact

The parties agree on the majority of facts applicable to whether the Court has personal jurisdiction over General Iron and it is undisputed that: General Iron is a Colorado corporation with its principal place of business in Colorado; General Iron does not advertise nationally or in the state of New Mexico; General Iron has not solicited business in New Mexico in any way; General Iron has not participated in any trade shows or fairs in New Mexico; AFCO provided General Iron with design specifications in Colorado; General Iron fabricated the ladder in Colorado; and General Iron delivered the product to AFCO in Colorado. The parties disagree, however, over whether General Iron knew that the ladder would ultimately be installed at a

power generating station in New Mexico. While General Iron denies having any knowledge that the ladder would be shipped to New Mexico, AFCO submitted a number of communications between AFCO and General Iron that identify the project as "Hobbs Generating Station — Hobbs New Mexico." Because these documents identify the project as a New Mexico project, AFCO contends that General Iron was on notice that the ladder would ultimately be shipped to New Mexico. While the Court agrees with General Iron that there is a genuine issue of fact as to whether the reference to Hobbs New Mexico placed General Iron on notice that the ladder would be shipped to New Mexico, the Court, for purposes of this opinion, will view these documents in the light most favorable to AFCO and assume that General Iron knew that the ladder was going to be shipped to New Mexico and installed in a New Mexico power plant.

## C. Personal Jurisdiction

"The question whether a federal court has *in personam* jurisdiction over a nonresident defendant is determined by the law of the forum state." *Fidelity and Ca. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985). Because the Court's jurisdiction over this case arises from the diversity of the parties, the Court can only assert personal jurisdiction over a defendant if two criteria are met. *See Melea, Ltd. v. Jawer, SA*, 511 F.3d 1060, 1066 (10th Cir. 2007). "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.' " *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed.R.Civ.P. 4(k)(1)(A)). "Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause." *Melea*, 511 F.3d at 1066.

In order to determine if General Iron could be subjected to the jurisdiction of a New

Mexico state court, the Court must look to the requirements of New Mexico law.  New Mexico has enacted a long arm statute stating that "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from," among other things, "the transaction of any business within th[e] state" and "the commission of a tortious act within th[e] state." NMSA 1978, 38-1-16 (1971).  While resolution of the jurisdictional question in this case would appear to require a rigid analysis of whether General Iron's conduct satisfies the elements of New Mexico's long arm statute, New Mexico cases have clarified that the New Mexico long arm statute merely provides an illustration of the types of contacts with the state that can satisfy due process. The actual test for determining whether a New Mexico court has personal jurisdiction over a defendant is whether the defendant has contacts with the state that "satisfy traditional notions of fair play and substantial justice under due process."  *See Monks Own, Ltd. v. Monastery of Christ in Desert*, 2007-NMSC-054, ¶ 23, 142 N.M. 549, 168 P.3d 121 (noting that a court's "inquiry is focused on constitutional principles, but th[at] the long-arm statute can be used to illustrate the types of contacts that clearly meet constitutional standards"); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (noting that "if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant").   Thus, while New Mexico's statutory definition of transacting business and committing a tortious act are relevant to the Court's analysis of whether the Court has personal jurisdiction, the Court's primary concern is whether exercising jurisdiction over General Iron comports with due process; that is, whether General Iron has "minimum contacts with the [New Mexico] such that [it] should reasonably anticipate being haled into court []here."

*Melea*, 511 F.3d at 1066; *Sublett v. Wallin*, 2004-NMCA-089, ¶ 14, 136 N.M. 102, 94 P.3d 845 (noting that "case law establishes that the analysis of whether the defendant transacted business within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns") (quotation and alteration marks omitted).

"The 'minimum contacts' test may be met in either of two ways. First, if a defendant has 'continuous and systematic general business contacts' with the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Melea*, 511 F.3d at 1066. Second, "a state's courts may exercise specific jurisdiction over a defendant that 'purposefully directed' its activities at the state's residents, if the cause of action arises out of those activities." *Id.* Here, it is clear that General Iron does not have "continuous and systematic business contacts" with New Mexico. Thus, the Court's sole inquiry[5] is whether General Iron has "purposefully avail[ed] itself of the privilege of conducting activities within [New Mexico], thus invoking the benefits and protections of [New Mexico's] laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The only contact that General Iron had with New Mexico was the notice General Iron possesed that the ladder would ultimately be installed at a power generating station in Hobbs, New Mexico. Aside from this, AFCO does not identify any other contact that General Iron had with New Mexico. AFCO argues that the fact that General Iron knew the ladder would be installed in New Mexico is sufficient for the Court to find that General Iron transacted business in New Mexico. The "transaction of any business" is defined in New Mexico as "doing a series

---

[5]The parties do not dispute that the cause of action arises from General Iron's alleged contact with New Mexico.

of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Monks Own*, 2007-NMSC-054, ¶ 24.  In *Monks Own*, the New Mexico Supreme Court concluded that a New Mexico monastery had transacted business in Canada because the contract at issue was to buy a Canadian trade name, an agent of the monastery had traveled to Canada for business purposes, the sale of the trade name required the monastery to file the assignment with the Canadian Intellectual Property Office, an agent of the monastery met in Canada with a Canadian government official, and the contract included a choice of law provision stipulating that Canadian law governed the agreement. *Id.*  Applying New Mexico's long-arm statute, the New Mexico Supreme Court noted that the extensive contacts that the monastery had with Canada were sufficient to find that the monastery had transacted business in Canada.  Here, in contrast, there is only a single contact with New Mexico—General Iron's knowledge that the ladder would ultimately be installed in New Mexico.  Because General Iron had only a single, tenuous contact with New Mexico, the Court concludes that General Iron did not transact business in the state.

In so concluding, the Court acknowledges that "a single transaction of business within [New Mexico] can be sufficient to subject a nonresident defendant to the jurisdiction of New Mexico courts, provided that the cause of action being sued upon arises from that particular transaction of business." *Customwood Mfg., Inc. v. Downey Const. Co.*, 102 N.M. 56, 57, 691 P.2d 57, 58 (N.M. 1984). However, an essential aspect of that single transaction is that the defendant *must* purposefully establish its contact with New Mexico.  *See id.* Here, while General Iron may have known that the ladder would ultimately be installed at a power generating station in New Mexico, AFCO has not presented any evidence that General Iron purposefully sought to

9

do business in New Mexico. *Customwood* is illustrative of this point. In *Customwood*, the defendant mailed a purchase order to a New Mexico resident, but "only pursuant to an agreement which [the resident] had already worked out with other parties." *Id.* In concluding that the act of mailing the purchase order to New Mexico did not constitute a minimum contact with the state, the New Mexico Supreme Court noted that "the purchase order mailed by defendant is more accurately characterized as a confirmation of a business deal already established, than as an initiation of a deal by defendant." *Id.* Much like *Customwood*, all of the business transactions related to the ladder took place in Colorado. In addition, unlike the defendant in *Customwood*, General Iron did not even ship its product into New Mexico. Instead, General Iron shipped the ladder to a location in Colorado with knowledge that the ladder would later be shipped to New Mexico by AFCO. In fact, General Iron did not have any contact whatsoever with a resident of New Mexico. And, if directly shipping a product to a New Mexico resident with whom a defendant has a purchase agreement is insufficient contact with the state to meet the minimum contacts test, then clearly shipping a product to a non-resident in another state, but with knowledge that the product will eventually be used in the New Mexico, is also insufficient to satisfy the minimum contacts requirement.

      AFCO next argues that General Iron committed a tortious act in New Mexico—an alternative basis for finding the minimum contacts required to confer personal jurisdiction under New Mexico's long-arm statute. Under New Mexico law, "a 'tortious act' can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico." *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶15, 131 N.M. 772, 42 P.3d 1221. According to the "place-of-the-wrong" rule applied by New Mexico courts, "[t]he place of the wrong is the location of the last act necessary to complete the

injury." *Id.* Thus, if the last act necessary to complete the injury to Flower's occurred in New Mexico, then General Iron committed a tortious act in New Mexico.

The allegedly negligent conduct that General Iron is accused of—the fabrication of the ladder—occurred outside of New Mexico. Flowers' injury, however, undisputedly occurred within the state. Because a defendant is deemed to have committed a tortious act in New Mexico "[w]hen negligent acts occur outside New Mexico which cause injury within the state," Flowers has sufficiently alleged that General Iron committed a tortious act in New Mexico. *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 20, 132 N.M. 312, 48 P.3d 50; *Roberts v. Piper Aircraft Corp.*, 100 N.M. 363, 366, 670 P.2d 974, 977(Ct. App. 1983) (noting that companies that negligently performed repair work on an airplane in another state committed a tortious act in New Mexico when the plane later crashed in New Mexico). However, the fact that a tortious act may have occurred in New Mexico does not end the Court's inquiry. Rather, the Court must still determine whether General Iron has sufficient minimum contacts with New Mexico, as result of General Iron's alleged tortious act, to satisfy due process. *See id.*

In an effort to establish the requisite minimum contacts with the state, AFCO argues that simply because General Iron knew the ladder would be installed in New Mexico, General Iron purposefully availed itself of the privilege of conducting business in New Mexico. Aside from this single contact with the state, AFCO does not point to a single other connection between General Iron and New Mexico. Thus, despite AFCO's attempt to reframe the nature of its argument, AFCO is essentially making what has been referred to as a stream of commerce argument—that a company can be haled into a state's courts because, by inserting a product into the stream of commerce, it was foreseeable to the company that the product would end up in a

11

certain state. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2788 (2011) (discussing "stream-of-commerce" jurisprudence). Foreseeability alone, however, is not enough. *See id.* Instead, there must be some other conduct, directed at the forum state, by which a court can conclude that the defendant purposefully availed itself of the forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559 (1980).

In *World-Wide Volkswagen*, the plaintiff attempted to establish that an Oklahoma court had personal jurisdiction over a New York corporation by arguing that it was foreseeable to the corporation that its products (vehicles) would be transported to and used in other states. The Supreme Court agreed with the plaintiff that it was foreseeable that the vehicle might be used in Oklahoma, but noted that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295. The Court explained that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state" but instead "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. Without additional connections with the forum state, "the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* at 298. However, "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *Id.* at 297. This is so because a state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the

expectation that they will be purchased by consumers in the forum State." *Id.*

The New Mexico Court of Appeals applied *Worldwide Volkswagen* in *Piper* to conclude that New Mexico courts did not have personal jurisdiction over a company that sold bad fuel to a pilot in Nevada even though it was foreseeable that the airplane might crash in New Mexico as a result of the bad fuel. *Id.* at 978. The New Mexico Court of Appeals explained that "foreseeability alone does not warrant personal jurisdiction over a non-resident defendant" and that without any evidence that the Nevada company had any connection with New Mexico, there were insufficient minimum contacts with the state to justify exercise of personal jurisdiction. *Id.* In contrast, a company that had negligently performed repair work on the same airplane in another state could be brought before New Mexico courts because it was not only foreseeable that the aircraft would be flown in New Mexico but the company had also previously repaired airplanes for New Mexico residents and had advertised in trade journals that circulate in New Mexico. *Id.* The Court of Appeals noted that based on its prior business dealings, the repair company had sufficient contact with New Mexico that it could reasonably anticipate being haled into court in New Mexico. *See id.*

Here, AFCO does not point to any conduct or connection with New Mexico that indicates that General Iron should reasonably have anticipated being haled into court in New Mexico. The contract for the fabrication of the ladder was entered into in Colorado between two corporations, neither of which is a New Mexico corporation. The ladder was manufactured in Colorado, and the ladder was delivered to AFCO in Colorado. General Iron does not advertise in New Mexico, and General Iron did not seek to do business in New Mexico. Rather than any purposeful activity on General Iron's part, it was AFCO's unilateral action of shipping the ladder to New Mexico to be installed at the power generating plant that created the sole connection between

General Iron and New Mexico.

While AFCO focuses on the fact that General Iron knew that the ladder would ultimately be shipped to New Mexico and installed in a New Mexico power generating station, AFCO fails to demonstrate how General Iron's knowledge that a purchaser of its products would definitely take its product into New Mexico is meaningfully different than the distributer's knowledge in *World-Wide Volkswagen* that its product would be taken to any one of the fifty states.  General Iron did not insert its product into the stream of commerce with an expectation that it might be purchased by a New Mexico resident.  Rather, General Iron sold its product directly to a Colorado purchaser.  While General Iron knew that AFCO would take the product to New Mexico, General Iron had no expectation that the ladder would later be sold to a New Mexico resident.  And, even if General Iron's decision to sell the ladder to AFCO knowing that the ladder would be used in New Mexico were deemed to constitute purposeful availment, this single isolated incident is simply insufficient to establish the minimum contacts with New Mexico necessary to satisfy due process.  *See World-Wide Volkswagen*, 444 U.S. at 297 (noting that jurisdiction in the forum where a product ends up may be proper "if the sale of a product . . . is not simply an isolated occurrence"). While the actual knowledge that General Iron had might be sufficient if General Iron had a systematic practice of selling products that it knew would be shipped to New Mexico, General Iron's knowledge in this case is insufficient because it involved an isolated transaction. AFCO has not introduced any evidence to suggest that General Iron has delivered multiple products it knew would end up in New Mexico or that General Iron made any efforts to specifically serve the New Mexico market.

Because General Iron did not purposefully seek to do business with anyone in New Mexico and did not purposefully seek to introduce its products into New Mexico, and since

14

AFCO has failed to identify any connection or contact that General Iron has with New Mexico other than its knowledge that the ladder would be shipped here, the Court concludes that due process precludes the Court from exercising personal jurisdiction over General Iron. General Iron does not have a substantial connection to New Mexico and the Court's exercise of personal jurisdiction over General Iron would violate the Tenth Circuit's caution that a "defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *AST Sports Sci. Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008). The Court will therefore grant General Iron's Motion for Summary Judgment and will enter summary judgment in General Iron's favor.

     Because the Court lacks personal jurisdiction over General Iron, the Court will not address General Iron's alternative argument that Flowers' claims are barred by judicial estoppel.

     IT IS ORDERED THAT Defendant General Iron & Steel Inc.'s Motion for Summary Judgment or in the Alternative, Motion to Compel Arbitration (Doc. No. 145) is GRANTED and summary judgment will be entered in General Iron's favor.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE