UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

GERALD FLOWERS,

    Plaintiff,

vs.                                                09-CV-569 JAP/SMV

LEA POWER PARTNERS, LLC,
COLORADO ENERGY MANAGEMENT, LLC
J.A. FREE, JR. & COMPANY,
AFCO STEEL, LLC,
BURNS & ROE ENTERPRISES, INC.,
MMR CONSTRUCTORS, INC.,
L.P.R. CONSTRUCION CO.,

    Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART DEFENDANT L.P.R. CONSTRUCTION CO.'S
*DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN MCDONALD
REGARDING HEDONIC DAMAGES (Doc. No. 271)

Defendant L.P.R. Construction Co. (LPR) asks the Court to exclude the testimony presented by Plaintiff's expert, Brian McDonald, PhD, pertaining to hedonic damages, or loss of enjoyment of life damages, under Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court will exclude Dr. McDonald's testimony regarding the dollar value of a statistical life because it is unsupported and unreliable. The Court will allow Dr. McDonald to testify about the meaning of hedonic damages and the areas of life that the jury may consider in quantifying the damages, if any, attributable to Plaintiff's loss of enjoyment of life. Thus, the Court will grant in

1

part and deny in part the DEFENDANT LPR CONSTRUCTION CO.'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN MCDONALD REGARDING HEDONIC DAMAGES (Doc. No. 271) (Motion). [1]

I. Background

Plaintiff Gerald Flowers (Plaintiff) brought claims for strict products liability and negligence in connection with an accident in which Plaintiff fell from a fixed ladder located in the Steam Turbine Building (STB) at the Hobbs Generating Facility (Facility).  On May 8, 2008, Plaintiff was working for Turnaround Welding Services as a pipefitter on an elevated steel platform in the STB.  Plaintiff alleges that after ascending the stairs to a platform, he discovered that he had forgotten a tool below.  Instead of using the stairs, Plaintiff used the nearby fixed ladder attached to the platform to descend to the lower level.  As Plaintiff began to descend the ladder, he lost his footing when his foot allegedly slipped on electrical conduit (one-inch pipe) behind the ladder. In addition, Plaintiff alleges that he was unable to stop himself with the ladder's side rails because they were constructed of angle iron and because he hit his hand on a cable tray box abutting the north side rail of the ladder.  Plaintiff fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and allegedly suffered back and neck injuries.

In Count I of the Second Amended Complaint (Doc. No. 165), Plaintiff asserts a claim

---

[1] In ruling on this motion, the Court has also considered PLAINTIFF'S RESPONSE TO DEFENDANT LPR CONSTRUCTION CO.'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN MCDONALD REGARDING HEDONIC DAMAGES AND MEMORANDUM IN SUPPORT THEREOF (Doc. No. 323) (Response); DEFENDANT LPR CONSTRUCTION CO.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT LPR CONSTRUCTION CO'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN MCDONALD REGARDING HEDONIC DAMAGES AND MEMORANDUM IN SUPPORT [DOC. NO. 323, FILED 3/1/12] (Doc. No. 336) (Reply).

for strict liability for the defective design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box.  In Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the ladder, the electrical conduit and the cable tray box.  The evidence shows that the fixed ladder was too close to the electrical conduit and cable tray box, which violated OSHA regulations requiring a clearance space of 7 inches around the ladder.[2]

Plaintiff's claims are asserted against Defendants Lea Power Partners, LLC (LPP) the project owner, Colorado Energy Management, LLC (CEM) the general contractor, LPR the ladder installer, MMR Constructors (MMR) the electrical contractor and installer of the conduit and cable tray boxes, AFCO Steel, LLC (AFCO) the ladder manufacturer, Burns & Roe Enterprises, Inc. the ladder designer, and J.A. Free & Company, Inc. (Free), the provider of the shop drawings for AFCO.  AFCO contracted with General Iron & Steel to fabricate the ladder.  General Iron & Steel has been dismissed from the case for lack of personal jurisdiction.[3]  *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).

Plaintiff has retained Dr. Brian McDonald as an economics expert witness to testify about the several categories of damages to which Plaintiff alleges he is entitled. One of Dr. McDonald's proposed areas of testimony concerns loss of enjoyment of life or hedonic damages.

---

[2] The conduit was located 5.75" from the center of the ladder's third rung (from the top). The cable tray box was abutting the north side rail of the ladder. (Green Report Ex. A AFCO Mot. Part. Summ. J. on Strict Liability (Doc. No. 285)).  OSHA regulations require 7" of clearance from the middle of the rungs of a ladder.  *See* 29 CFR § 1926.1053 (a)(13) (stating,"[t]he minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches. . . ."); 29 CFR § 1910.27 (c)(4) (stating, "[t]he distance from the centerline of rungs, cleats, or steps to the nearest permanent object in back of the ladder shall be not less than 7 inches, . . .").

[3] J.A. Free, Jr. & Company has not entered an appearance and has not filed an answer or responsive pleading.

In the Motion, LPR asks the Court to exclude all of Dr. McDonald's proposed testimony on hedonic damages.

II.  Standard of Review

In this diversity jurisdiction case, the Court must follow New Mexico law allowing the recovery of hedonic damages, but the Court must follow the federal rules of evidence as interpreted by federal case law on the admission of expert testimony.  *See Couch v. Astec Industries, Inc.*, 2002-NMCA-084, ¶¶ 17-20, 132 N.M. 631, 53 P.3d 398 (allowing recovery of hedonic damages).  *See also BNSF Ry. Co. v. LaFarge Southwest, Inc.*, Case No. 06-1076 MCA/LFG, 2009 WL 4279849, *2 (D. N.M. Feb. 9, 2009) (unreported decision) (stating that admissibility of evidence is governed by federal law, but substantive state law governs recovery of damages) (citing *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 877-890 (10th Cir. 2006) (identifying several instances in which federal district courts erred in applying state rules of evidence)).  The federal district courts in New Mexico and the Tenth Circuit Court of Appeals are more restrictive than New Mexico state courts as to the admission of expert opinions on hedonic damages.

Under Rule of Evidence 702,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In applying this rule, the Court serves as a "gatekeeper" to ensure the relevance and reliability of all proffered expert testimony.  *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137,

147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993)). Rule 702 grants the trial judge broad discretion in deciding reliability. *Id.* at 152. Generally, to be considered reliable, the expert's proposed testimony must be based on more than a subjective belief or unsupported speculation. *Daubert,* 509 U.S. at 590.

      III. Discussion

New Mexico courts allow claimants to recover hedonic damages. *Couch*, 2002-NMCA-084, ¶¶ 17-20. In *Couch* the New Mexico Court of Appeals upheld the admission of Dr. McDonald's testimony that the average value of a statistical life (VSL) at that time was $3 million.[4] The trial court found that the average VSL helped the jury to award hedonic damages. *Id.* However, the appellate court upheld the trial court's exclusion of his testimony regarding what percentage of that amount would be attributable to the claimant's loss of enjoyment of life. The court concluded that the jury was properly allowed to "rely on other evidence, such as Plaintiff's testimony, to determine how Plaintiff derived the most enjoyment from his life and how his injuries affected that enjoyment." *Id.* ¶¶ 18-19. Allowing testimony on a specific dollar amount or percentage of the total VSL attributable to enjoyment of life would have intruded on the jury's domain. *Id.* ¶ 20.

In this case, Dr. McDonald proposes to present his opinions of: 1) an economist's definition of hedonic damages; 2) a description of the areas of human experience that a fact finder should consider in an award, such as how Plaintiff spent his leisure time and Plaintiff's community activities; and 3) a discussion of peer-reviewed research on the value of a statistical

---

[4] Dr. McDonald testified that the studies cited in his report posited a range of values from $500,000 to $11 million and that the average value of a whole life as gleaned from the studies was $3 million. Dr. McDonald testified that this figure included the value of an entire life from cradle to grave and included earnings as well as intangible enjoyment.

life (VSL), which he would testify equals an average range of $5 to $6 million.  Dr. McDonald has attached to his report "several published studies," which he claims support the reliability of the VSL determinations. (Mot. Ex. A, App'x A.)  Plaintiff asserts that Dr. McDonald's testimony regarding the range of values pertaining to VSL would then help the jury determine the dollar amount sufficient to compensate Plaintiff for the loss of enjoyment of his life due to his injuries.

The plaintiff in *Harris v. United States*, Civ. No. 06-0412 JP/KBM, 2007 WL 4618597, *1 (D. N.M. June 7, 2007), offered similar testimony from Dr. McDonald quantifying the average VSL per year.  This Court excluded evidence of the "benchmark" amount because it was based on a "subjective belief or unsupported speculation."  2007 WL 4618597 at * 2. The Court stated, "[Dr. McDonald's] report contains no apparent discussion of how Dr. McDonald generated the proposed benchmark figure or any citation to credible sources that support such a figure."  *Id.*  Generally, New Mexico United States District Judges have excluded or limited expert testimony on hedonic damages.  *See, e.g., Lujan v. Cooper Tire & Rubber Co.*, Case No. Civ. 06-173 RHS/KBM, Order Granting Cooper Tire & Rubber Company's Motion to Exclude or Limit the Testimony of Plaintiff's Retained Expert, Thomas McKinnon, 2008 WL 7489095, * 2 (June 13, 2008) (excluding expert testimony of hedonic damages because jury was competent to determine hedonic damages without an expert); *Martinez v. Caterpillar, Inc.*, Case No. Civ. 07-236 RHS/RLP, Order Granting Caterpillar Inc.'s Motion to Exclude Testimony From Plaintiff's Economist Concerning Hedonic Damages, Doc. No. 61 (Sept. 6, 2007) (excluding expert  testimony that loss of value of life benchmark was $10,000 per year as speculative and invasive of jury's domain).  United States District of New Mexico Judge M. Christina Armijo concluded,

> [t]he majority rule in federal courts . . . is that expert testimony which places a dollar figure before the jury in an attempt to quantify the value of a human life is inadmissible and does not meet the relevance and reliability factors set forth in *Daubert* and its progeny.

*BNSF Ry. Co.*, 2009 WL 4279849, *2 (citing *Raigosa v. Roadtex Transp. Corp.*, No. 04 CV 305 RLP/WDS, Doc. 60, at 4-5 (D.N.M. Feb. 10, 2005) (Puglisi, M.J.) (unpublished memorandum opinion and order collecting cases)). The Tenth Circuit has upheld a court's allowance of expert testimony consisting of "an explanation adequate to insure the jury did not ignore a component of damages allowable under state law" by offering "his interpretation of the meaning of hedonic damages" and identifying "four broad areas of human experience which he would consider in determining those damages." *See Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1246 (10th Cir. 2000).

In the Motion, LPR and its expert Thomas Ireland attack Dr. McDonald's qualifications to provide an opinion on the value of the enjoyment of life contending that "[a] background in economics does not qualify Dr. McDonald to testify regarding the 'concept and meaning of hedonic damages' or give any insight into the 'broad areas of human experience which should be considered by the trier of fact in determining hedonic damages for a particular plaintiff.'" (Mot. Ex. B Ireland Aff. ¶ 27.) However, the Court finds that Dr. McDonald is qualified to offer an opinion regarding the meaning of hedonic damages. And Dr. McDonald will be permitted to offer generalized testimony about the concept of hedonic damages. The Motion will be denied in part insofar as it seeks to exclude opinion testimony on this aspect of hedonic damages.

Next, LPR attacks the reliability of Dr. McDonald's opinion: "there has never been any peer review of the degree to which Brian McDonald's methods for calculating the enjoyment of life are either reliable or accurate." (*Id.* ¶ 23.) LPR maintains that it could find no publications

7

reviewing the existing published research on hedonic damages. LPR contends that Dr. McDonald has failed to cite an objective non-speculative source regarding: 1) whether all the VSL research agrees on the reasonable range of $5-6 million (the list of sources attached to Dr. McDonald's opinion does not); 2) if the VSL research shows a different reasonable range; 3) how VSL research is applicable to personal injury cases in addition to wrongful death cases; 4) whether economics is the appropriate discipline to measure enjoyment of life; and 5) whether enjoyment of life is directly related to length of life. Without this information, LPR contends that the $5-6 million range proposed by Dr. McDonald is unreliable.

In his Response, Plaintiff first argues that the Court should strike an affidavit by Thomas Ireland, an economics professor, attached to the Motion. The affidavit was prepared in connection with a Motion In Limine filed in *Esquibel v. John Q. Hammons Hotels Mgmt, LLC*, Case No. 09 CV 235 LH/LFG, which was settled and dismissed before the court ruled on the motion.[5] The Motion In Limine asked United States District of New Mexico Judge Leroy Hansen to exclude evidence of hedonic damages from the same expert, Dr. McDonald. Plaintiff asks the Court to strike Ireland's affidavit because LPR did not disclose this expert in its Rule 26 disclosure. However, Rule 26 requires disclosure of trial experts only.[6] Because the information in the affidavit is relevant to hedonic damages, the Court will consider Ireland's affidavit in

---

[5] LPR's counsel also represented the defendant in *Esquibel*.

[6] Rule 26 (a) provides,

(2) Disclosure of Expert Testimony.
    (A) In General. . . . a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

Fed. R. Civ. P. 26(a)(2).

8

ruling on this Motion.

Prof. Ireland states, "it is my opinion, and the general opinion of economists, that economics cannot measure the dollar value of an individual's enjoyment of life or quantify intangibles such as enjoyment, happiness, pain or suffering." (Mot. Ex. B, Ireland Aff. ¶ 6) (emphasis added). Prof. Ireland further states, "[t]he notion that economists can come up with a dollar figure or 'range' for these intangible losses, which is what an estimate for 'loss of enjoyment of life' involves, has not attained general acceptance among economists . . . ." (*Id.* ¶ 11.) And, he states, "[t]he value of life studies cited and relied upon by Dr. McDonald do not represent, and do not purport to measure, the value or extent to which an individual enjoys his or her life." (*Id.* ¶ 13.) He concludes "the value of life literature is . . . not about how much less people enjoy their lives because of injuries." (*Id.* ¶ 29.) Finally, he states, "[t]he term 'reasonable range' carries no significance in the realm of statistics and amounts to sheer speculation." (*Id.* ¶ 17.) The articles cited in the Appendix to Dr. McDonald's report provide a wide range of dollar figures for the VSL: from as little as $3 million in the 1990's to as much as $12 million in a 2003.

Plaintiff counters that the court in *Couch* allowed Dr. McDonald to testify that the average VSL at that time was $3 million. *See Couch*, ¶¶ 17-20. However, Plaintiff has offered no binding legal authority suggesting that Dr. McDonald's proposed testimony in this regard is proper in under the standards applied in federal court. The weight of authority within the federal courts in the District of New Mexico and the Tenth Circuit clearly favors excluding testimony concerning a hypothetical benchmark or average total value of a statistical life. Therefore, the Court will exclude all testimony from Dr. McDonald purporting to provide a dollar value of a statistical life.

IT IS ORDERED that  DEFENDANT L.P.R. CONSTRUCTION CO.'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN MCDONALD REGARDING HEDONIC DAMAGES (Doc. No. 271) is granted in part and denied in part:

1.  Dr. McDonald may testify about the definition of hedonic damages and the components of life that may be considered in calculating hedonic damages;

2.  Dr. McDonald may not testify about any dollar range of values attributable to a statistical life.

_____
SENIOR UNITES STATES DISTRICT JUDGE