**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

**GERALD FLOWERS,**

      **Plaintiff,**

**vs.**                                      **09-CV-569 JAP/SMV**

**LEA POWER PARTNERS, LLC,**
**COLORADO ENERGY MANAGEMENT, LLC**
**J.A. FREE, JR. & COMPANY,**
**AFCO STEEL, LLC,**
**BURNS & ROE ENTERPRISES, INC.,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO.,**

      **Defendants.**
**and**

**LEA POWER PARTNERS, LLC, and**
**COLORADO ENERGY MANAGEMENT, LLC,**

      **Third-Party Plaintiffs,**

**vs.**

**L.P.R. CONSTRUCTION CO. and**
**MMR CONSTRUCTORS, INC.**

      **Third-Party Defendants.**
**and**

**AFCO STEEL, LLC,**

      **Third-Party Plaintiff,**

**vs.**

**J.A. FREE, JR. & COMPANY,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO. and**
**BURNS & ROE ENTERPRISES, INC.**

      **Third-Party Defendants.**

1

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT MMR CONSTRUCTORS INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I –
PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 282)**

Defendant MMR Constructors, Inc. (MMR) asks the Court to grant summary judgment

dismissing Plaintiff's claim against MMR for strict products liability asserted in PLAINTIFF'S

SECOND AMENDED COMPLAINT (Doc. No. 165) (Complaint).[1]  Because MMR, as the

electrical contractor that installed the conduit and the cable tray box at issue, is not part of the

chain of supply of the conduit and the cable tray box, the Court will grant the Motion and will

dismiss Plaintiff's Count I strict products liability claim against MMR.

I.  Background

On May 8, 2008, during the construction of the Steam Turbine Building (STB) at the

Hobbs Generating Facility (Facility), Plaintiff was working for subcontractor Turnaround

Welding Services as a pipefitter on an elevated steel platform in the STB.  Plaintiff alleges that

after ascending the stairs to the platform, he discovered that he had forgotten a tool below.

Instead of using the stairs, Plaintiff used the nearby fixed step-through ladder attached to the

platform to descend to the lower level.  As Plaintiff began to descend the ladder, his foot

allegedly slipped on an electrical conduit (one-inch pipe) behind the ladder's third rung from the

top.  Plaintiff alleges that after he slipped, he was unable to stop his fall using the ladder's side

---

[1] In ruling on DEFENDANT MMR CONSTRUCTORS, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON COUNT I – PLAINTIFF'S STRICT LIABILITY
CLAIM (Doc. No. 282) (Motion), the Court has also considered PLAINTIFF'S RESPONSE TO
DEFENDANT MMR CONSTRUCTORS INC.'S  MOTION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT I – PLAINTIFF'S STRICT LIABILITY CLAIM [DOCKET NO.
282, FILED 1/17/12] (Doc. No. 314) (Response); and DEFENDANT MMR CONSTRUCTORS
INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNT
I-PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 331) (Reply) as well as all exhibits to
the Motion, Response and Reply.

rails constructed of angle iron.  Plaintiff also alleges that he was unable to grip the side rail

because he hit his hand on the cable tray box abutting the north side rail of the ladder.[2]  Plaintiff

fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and

allegedly suffered back and neck injuries.

In Count I of the Complaint, Plaintiff asserts a claim for strict liability for the defective

design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box.

Plaintiff claims that the ladder, the electrical conduit, and the cable tray box were unreasonably

dangerous and defective when they were designed, manufactured, purchased, and installed.  In

Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the

ladder, the electrical conduit, and the cable tray box.  The evidence shows that the conduit was

located 5.75" from the center of the ladder's third rung from the top.  The Occupational Health

and Safety Administration (OSHA) has promulgated regulations for fixed ladders, which require

the "minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any

obstruction behind the ladder shall be 7 inches." 29 CFR § 1926.1053(a)(13).[3]  The cable tray

---

[2] In his deposition, Plaintiff testified that his foot slipped on something and that "the only thing that makes sense" was that he slipped on conduit located behind the ladder and he was unable to keep his grip on the side rails due to their angle and size. (Plf. Resp. Ex. H, Flowers Dep. 68:13-69:6; 75:4-10; 166:5-9.)

[3] The conduit was located 5.75" from the center of the ladder's third rung (from the top). The cable tray box was abutting the north side rail of the ladder. (Green Report Ex. A AFCO Mot. Part. Summ. J. Doc. No. 285).   OSHA regulations require 7" of clearance from the middle of the rungs of a ladder.  *See* 29 CFR § 1926.1053 (a)(13)  (stating,"[t]he minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches. . . ."); 29 CFR § 1910.27 (c)(4) (stating, "[t]he distance from the centerline of rungs, cleats, or steps to the nearest permanent object in back of the ladder shall be not less than 7 inches, . . .").  Defendants, however, have disputed Plaintiff's contention that the Facility was subject to OSHA regulations. *See* Proposed JOINT PRETRIAL ORDER at p. 10.

box abutted the ladder's right side rail and was also within the clearance area required by OSHA.

Plaintiff's claims are asserted against several Defendants.  Defendant Lea Power Partners, LLC (LPP) is the owner of the Facility.  Defendant Colorado Energy Management, LLC (CEM) was the Engineering Procurement and Construction Contractor for the construction of the Facility.  Defendant L.P.R. Construction Co. installed the fixed platform and the fixed ladder.  Defendant MMR installed the electric conduit and the cable tray box.  Defendant AFCO Steel, LLC (AFCO) supplied the fixed ladder.  Defendant Burns & Roe Enterprises, Inc. (Burns & Roe) designed the ladder.  Defendant J.A. Free & Company, Inc. (Free), provided the shop drawings of the ladder for AFCO.  AFCO contracted with General Iron & Steel to fabricate the ladder.[4]

For purposes of this Motion, MMR admits, as an undisputed fact, that as Plaintiff began to descend the ladder, his foot slipped on an electrical conduit (one-inch pipe) behind the ladder's third rung from the top. MMR also admits that some of the conduit that MMR installed was supplied by CEM, the general contractor, and MMR also purchased additional conduit from Cain Electric Supply. (Mot. Ex. 1, MMR Vice Pres. Tony Gibson Aff. ¶ 7.)  Some of the cable tray box that MMR installed was supplied by CEM, and MMR also purchased additional cable tray from Summit Electric. (*Id.*)  MMR also admits for purposes of this Motion that the position of the conduit and the cable tray violated OSHA standards because these items were located too close to the ladder.  However, MMR maintains that despite these undisputed facts, Plaintiff's strict products liability claim against MMR fails as a matter of law.

---

[4] The Court dismissed all claims against General Iron & Steel for lack of personal jurisdiction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).  J.A. Free, Jr. & Company has not entered an appearance and has not filed an answer or responsive pleading.

II. Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-movant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

Because the Court's jurisdiction in this case is based on diversity of citizenship, the Court will apply New Mexico substantive law.  *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).  If the state's highest court has not addressed a dispositive legal issue, a federal court must determine what decision the state court would make if faced with the same facts and issues by considering state intermediate appellate court decisions, decisions of other states, federal decisions, and the general weight and trend of authority.  *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988).

New Mexico adopted the principle of strict products liability based on the Restatement (Second) of Torts Section 402A (1965) in *Stang v. Hertz Corp.*, 83 N.M. 730, 732, 497 P.2d 732, 734 (1972). As set out in *Stang*, Section 402A provides:

>(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>>(a) the seller is engaged in the business of selling such a product, and
>>(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
>(2) The rule stated in Subsection (1) applies although
>
>>(a) the seller has exercised all possible care in the preparation and sale of his product, and
>>(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Id. 497 P.2d at 734.

"The purpose behind the strict products liability doctrine is to allow an injured user or consumer to recover against a supplier or manufacturer without the requirement of proving negligence. This purpose is accomplished by imputing liability for an injury caused by a product to the seller of the product, with or without the presence of negligence on his part." *Trujillo v. Berry*, 106 N.M. 86, 88, 738 P.2d 1331, 1333 (N.M. Ct. App.) (citations omitted), *cert. denied*, 106 N.M. 24, 738 P.2d 518 (1987). Under Section 402A, there are three types of product defects: manufacturing defects, design defects, and warning defects. *Fernandez v. Ford Motor Co.*, 879 P.2d 101, 111 (N.M. Ct. App. 1994) (citing *Jiminez v. Dreis & Krump Mfg. Co.*, 552 F. Supp. 301, 303-04 (S.D.N.Y. 1982), *rev'd on other grounds*, 736 F.2d 51 (2d Cir. 1984)). "Strict products liability does not, however, preclude liability against a retailer based upon the alternative ground of negligence of the seller where such negligence can be proved." *Trujillo*, 738 P.2d at 1333. "All parties in the chain of distribution of a defective product are strictly liable." *Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 10, 131 N.M. 87, 33 P.3d 638.

III. Discussion

In this Motion, MMR asks for partial summary judgment on Plaintiff's Count I strict products liability claim based on four arguments:

1) as an electrical installer, MMR is not in the "chain of supply" of the conduit and the

cable tray box;

2) Plaintiff has failed to prove that the conduit and cable tray box were themselves

defective, but only asserts that their position in relation to the ladder was incorrect;

3) both the conduit and the cable tray box were structural improvements to a building,

and are not "products" for purposes of strict liability; and

4) MMR did not design or manufacture the conduit and cable tray box.

A.  MMR Is A Mere Installer

First, MMR argues that its role was limited to installation of the conduit and the cable

tray box.  MMR cites several cases to support its argument that courts do not hold strictly liable

a defendant who provides a professional service in which the transfer of a product is only

incidental to that service.  *See, e.g., Jackson v. City of Franklin*, 554 N.E.2d 932, 940 (Ohio Ct.

App. 1988) (holding that under Restatement (Second) of Torts § 402A, a contractor that installed

a swimming pool could not be held strictly liable in tort for swimmer's death); *Bruzga v. PMR*

*Architects*, 693 A.2d 401, 405-06 (N.H. 1997) (holding that architect and contractor who

designed and constructed a prison could not be strictly liable for death of inmate who hung

himself on a sprinkler in ceiling of secure psychiatric unit).  The New Hampshire court stated,

"[a]rchitects and building contractors are not in the business of 'mass production and distribution

of goods to a large body of distant consumers.' . . . . Simply stated, 'the raising of a building and

the assembly-line manufacturing of a product are not analogous processes.'" *Bruzga*, 693 A.2d at

405.  *See also Hunt v. Guarantee Elec. Co. of St. Louis*, 667 S.W.2d 9,11 (Mo. 1984) (declining

to impose strict liability against an installer of a timer in an industrial machine).  In other words,

these courts concluded that an installer is not a "seller is engaged in the business of selling . . . . a

product" as required in Restatement (Second) of Torts § 402A.

The *Hunt* case is instructive. Dallas Hunt (decedent) was killed while at work on the mix floor at the plant of his employer, Purex Corporation (Purex). His wife and four children (plaintiffs) brought a wrongful death action against Guarantee Electrical Company (defendant) alleging negligence and strict liability. The plaintiffs claimed that the defendant "sold, furnished, designed, supplied and assembled the electrical system that controlled the agitator in the mix tank." *Id.* at 10. The court found that the plaintiffs presented no evidence that the defendant manufactured, sold, furnished, or supplied the component parts of the timer its employees installed. *Id.* Contractually, the defendant was obligated to supply only replacement materials and supplies. The trial court required the plaintiffs to prove that the defendant in the regular course of its business placed the system as designed in the stream of commerce. *Id.* The plaintiffs did not show that the defendant was engaged in the business of furnishing electrical timing systems. The court held,

> [a]bsent proof defendant designed, assembled, and sold the system to Purex in the course of its business, plaintiffs' proof goes only to showing defendant installed an automatic timer pursuant to its contract to provide the services of electricians. The policy reasons justifying imposition of strict tort liability are not present in this case where defendant rendered professional services in installing a timer.

*Id.* at 12. Like the defendant in *Hunt*, MMR installed the conduit and the cable tray as a service, and MMR was not in the business of designing, assembling or selling conduit and cable tray boxes.

MMR also points to two New Mexico cases, *Livingston v. Begay*, 652 P.2d 734, 738-39 (N.M. 1982) (holding that motel operator could not be held strictly liable for defective heater installed in motel room because motel room was not a product); *Lay v. Big Boy Restaurant, Inc.*,

548 P.2d 117 (N.M. 1976) (declining to impose strict liability against a restaurant for defective

window pane in the restaurant that shattered and injured plaintiff because a restaurant is not a

product).  Although *Livingston* and *Lay* are not directly on point, MMR convincingly argues that

imposing strict liability on it is unjustified in this case, and Plaintiff has a negligence claim

available to address any negligence by MMR. The Court concludes that MMR, like LPR,

performed a service, the installation of conduit and cable tray boxes, and Plaintiff cannot assert a

strict products liability claim against MMR.  *See* MEMORANDUM OPINION AND ORDER

GRANTING IN PART AND DENYING IN PART DEFENDANT L.P.R.'S MOTION FOR

SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No.

341) (dismissing strict liability claim against ladder installer).

Plaintiff counters that MMR was more than a "mere installer" because MMR's

employee, Lewis Bell, testified that during the installation process, MMR used a conduit bender

to bend the conduit around obstructions, including the ladder at issue here. (Resp. Ex. 1, Bell

Dep. 70:5-13).  Plaintiff contends that because MMR altered the conduit to suit installation

needs, MMR entered into the chain of supply for the conduit.  In his Response, Plaintiff cites one

case to support this assertion. *Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 10, 131 N.M. 87, 33

P.3d 638.  However, the *Smith* case involved the use of a firearm, and the court held that genuine

issues of material fact as to whether handgun was in an unreasonably dangerous and defective

condition precluded summary judgment on a products liability claim. The *Smith* case did not

involve an installer.  The Court can reasonably infer that MMR bent the conduit to aid the

installation and the Court concludes that this conduct did not transform MMR from an installer

to a product supplier.  Based on the analysis in the MEMORANDUM OPINION AND ORDER

(Doc. No. 341), in which the Court analyzed the case law from New Mexico and other

jurisdictions as well as the policy considerations behind imposing strict products liability, and

the additional cases and arguments from MMR, the Court will grant summary judgment in favor

of MMR and will dismiss the strict products liability claim against MMR.  MMR, as the installer

of the electric conduit and the cable tray box, is, as a matter of law, not part of the chain of

supply of the conduit and the cable tray box.

B.  The Conduit And Cable Tray Were Not "Defective"

MMR next asserts that the conduit and the cable tray box were not defectively designed

or manufactured.  A product is defective if, at the time of sale or distribution, it contains a

manufacturing defect, is defective in design, or is defective because of inadequate instructions or

warnings. *Spectron Development Laboratory, a Div. of Titan Corp. v. American Hollow Boring*

*Co.*, 1997-NMCA-025, 123 N.M. 170, 936 P.2d 852 (quoting Restatement (Third) of Torts

Section 1 (tentative draft)).   "[A] product contains a manufacturing defect when the product

departs from its intended design even though all possible care was exercised in the preparation

and marketing of the product[.]" *Id.*

MMR contends that Plaintiff's expert, Jason English, did not identify any defects

inherent in the conduit and the cable tray box themselves. MMR also points out that in Plaintiff's

answers to interrogatories, Plaintiff indicated that the basis for his allegation that MMR

defectively designed or manufactured the conduit and the cable tray box was that under MMR's

contract with CEM,

> MMR "was to assume 'all electrical responsibilities' including purchasing, furnishing,
> delivering, installing, aligning, inspecting and testing the electrical conduits and cable
> tray box at issue. MMR also billed [CEM] for the use of equipment such as hydraulic
> benders to be used on the electrical conduits and cable tray box at issue.  Please see
> applicable contracts at issue."

 (Mot. Ex. 2.)  In addition, MMR's Vice President testified by affidavit that "MMR is in the

business of installing electrical components including conduit and cable tray. . . MMR does not

manufacture conduit. . .  MMR does not manufacture cable tray." (Mot. Ex. 1, Tony Gibson Aff.

¶¶ 2-4.)

MMR cites the *Livingston* case in which the New Mexico Supreme Court ruled that a

hotel operator could not be held strictly liable for defects in fixtures and furnishings of rooms

held out to the public.  In *Livingston*, the plaintiff's decedent was asphyxiated by carbon

monoxide gas leaking out of a heater in his hotel room.  The court reasoned that even though the

heater in the hotel room was placed near the sink, which allowed a guest to bump it and

disconnect the heater's exhaust vent allowing the carbon monoxide leak, "[t]he unsafe design of

a hotel room is simply not the type of defect for which strict liability was fashioned as a

remedy." 652 P.2d at 738.  MMR argues that Plaintiff's claim is the same type of claim that the

court rejected in *Livingston* because the only defect related to the conduit and the cable tray box

that Plaintiff has proven is the close proximity of these items to the ladder from which Plaintiff

fell, and the Court should reject Plaintiff's claim for the same reasons that the C ourt rejected the

claim in *Livingston*. [5]

Plaintiff counters that summary judgment in inappropriate because there is a factual

dispute regarding whether the conduit and the cable tray box were defective.  Plaintiff notes that

the facts are disputed as to whether these items were improperly installed after the ladder was

_____

[5] In *Livingston*, however, the plaintiff argued that there were three defective products involved: the room itself as a whole, the gas heater, and the vent. *Id.* at 738.  The court held that the hotel operators were not part of the chain of supply for the heater: "[W]e hold that a motel operator is not strictly liable for defects in the fixtures and furnishings of the rooms he holds out to the public." *Id.* at 739.  Finally, the court did not impose strict liability on the hotel operators for the defective vent and determined, "[t]he traditional duty imposed upon hotel operators as discussed supra is adequate to cover any claim by plaintiff, and strict liability will not be imposed as to this item." *Id.*

installed and too close to the ladder in violation of OSHA regulations. In addition, Plaintiff

asserts that these defects caused Plaintiff's injury because Plaintiff slipped on the conduit trying

to descend the ladder, and Plaintiff was unable to maintain his grip on the side rails due to the

placement of the cable tray box.  Plaintiff cites one case to support this argument.  *Tingey v.*

*Radionics*, 193 Fed. Appx. 747, 753 (10th Cir. 2006).  In *Tingey*, the Tenth Circuit Court of

Appeals applied Utah law and reversed a summary judgment in favor of a manufacturer of a

medical implant because fact issues existed as to whether implant was defectively designed, and

therefore, unreasonably dangerous.  The Court fails to see the similarity of the *Tingey* to this

case.  The dispute regarding whether MMR installed the conduit and the cable tray box prior to

the installation of the ladder and whether the conduit and the cable tray box were improperly

installed too close to the ladder does not prove that the conduit and the cable tray box were

inherently defective.  Moreover, the dispute regarding the timing of the installation of the ladder,

the conduit, and the cable tray box and any fault arising from their placement can be addressed

in Plaintiff's Count II negligence claim. *See Livingston*, 652 P.2d at 739 (noting that the

traditional duty imposed on hotel operators was adequate to cover any claim by the plaintiff).   In

sum, any fault regarding the improper installation of the ladder, the conduit, and the cable tray

does not prevent summary judgment on the strict products liability claim against MMR.

C.  Are The Conduit And The Cable Tray Box Products?

MMR next argues that Plaintiff's Count I strict products liability claim fails because the

conduit and cable tray box are not "products."  MMR maintains that these items were installed

into the STB itself and should be considered structural improvements, not "products."  MMR

points to several holdings in which courts did not impose strict products liability on parties

involved in placing structural components into buildings.  *See, e.g., Fed. Ins. Co. v. Bonded*

*Lighting Protection Sys., Inc.*, Case No. 07 CV 80767, 2008 WL 5111260, *4 (S.D. Fla. Dec. 3,

2008) (holding that lighting protection system installed in building was a structural improvement

to real estate and not a product subject to strict liability); *Moore v. Jesco, Inc.*, 531 So.2d 815,

817 (Miss S. Ct. 1988) (holding that component parts of chicken houses were not products).[6] *See*

*also Menendez v. Paddock Pool Construction Co.*, 836 P.2d 968, 977 (Ariz. 1992).  (explaining

that in-ground pool was a structural improvement not a product); and *Lowrie v. City of Evanston*,

365 N.E.2d 923, 929 (Ill. Ct. App. 1977) (holding that neither parking structure nor parking

spaces were products).

Plaintiff responds by citing a Hawaii case in which a prefabricated mill building was held

to be a product subject to a claim for strict liability from a plaintiff who fell from a girt that gave

way because the connecting clip had been only tack-welded.  *Kaneko v. Hilo Coast Processing,*

65 Haw. 447, 458 (1982).  Plaintiff also cites, *Lantis v. Astec Ind., Inc.*, 648 F.2d 1118  (7th Cir.

1982), in which the court held that, under Indiana law, a seller-manufacturer of asphalt mixing

plants could be subject to strict liability because the plant required assembly after shipment from

---

[6] In *Moore*, the Mississippi Supreme Court held that component parts of a building were not products,

> In *Smith v. Fluor Corp.*, 514 So.2d 1227 (Miss.1987), this Court held that § 15-1-41 [statute of limitations on suits involving real property] applied to a heat exchanger installed in a refinery because the heat exchanger was an improvement to real property rather than a product. We upheld summary judgment in favor of the defendant corporation that designed, manufactured and installed the heat exchanger. In the context of the case at bar, whether § 15-1-41 protects suppliers of products and/or materialmen becomes immaterial if the item supplied is not a product. Based on our analysis in *Smith v. Flour Corp.*, *supra*, we hold that the component parts of the subject chicken houses constitute "improvements to real property" and not "products". As a matter of law, then, an action based on strict products liability will not lie and summary judgment was properly granted.

*Moore*, 531 So.2d at 817.

manufacturer. *Id.* at 1119.  A worker assembling the plant was killed when he fell through an

opening in the center of a service platform provided as part of the plant.  *Id.* Because the

component parts of the plant arrived without substantial change and the use of the platform

during assembly was foreseeable, the court allowed the plaintiff to go the jury on a strict liability

claim.  Finally, Plaintiff cites another Hawaii case, *Leong v. Sears Roebuck & Co.*, 970 P.2d 972

(Haw. 1998).  In *Leong*, the court, in response to a certified question, held that an escalator in a

commercial building constitutes a product for purposes of strict products liability under Hawaii

law. *Id.* at 979. The manufacturer and distributor of the escalator were strictly liable for injuries

to a plaintiff whose child caught her hand in the escalator's handrail.  However, the court held

that the building owner, Sears, was not subject to strict liability because is was not a seller,

manufacturer, or assembler of the escalator. The court concluded,

> [T]he public policy considerations . . . would be furthered by applying the [strict liability] doctrine to Westinghouse and Schindler. Such an application affords maximum protection to persons injured by defective products. Westinghouse and Schindler, the alleged commercial manufacturer and distributor, are positioned most appropriately to bear the burden of . . . accidental injuries caused by defective escalators as a cost of doing business. And, finally, applying the doctrine of strict products liability to Westinghouse and Schindler in this instance creates "an incentive to guard against . . . defects in the future."

*Id.*

Plaintiff argues that the *Lantis* case provides a good analogy to this case because the

platform in *Lantis* was a component part of an asphalt plant, and the platform was used to

assemble the plant. (Resp. 10.)  However, Plaintiff's argument is faulty. According to Plaintiff,

the conduit and the cable tray box were component parts of the STB and, like the platform in

*Lantis*, they should be considered products.  However, Plaintiff has not argued that the STB itself

is a product.  In *Lantis*, the asphalt mill was considered a product and the platform was a

component part of the larger product. *Id.* 648 F.2d at 1121-22.  Plaintiff also compares the

conduit and the cable tray box the escalator in *Leong*.  Plaintiff contends that, like the escalator

manufacturer and distributor in *Leong*, MMR, "in bending and designing the conduit, has created

a component part that was incorporated into something larger, the generating station, and thus, is

a 'product' for strict liability purposes." (Resp. 11-12.)  However, Plaintiff overlooks an

important fact, MMR did not manufacture or distribute the conduit and cable tray box, MMR

merely installed the conduit and the cable tray box.  Thus, MMR is not "positioned most

appropriately to bear the burden of accidental injuries caused by defective" conduit and cable

tray boxes.  *Leong*, 970 P.2d at 979.

Nevertheless, the Court need not decide whether, as a matter of law, the conduit and the

cable tray box are "products" for purposes of strict liability, and the Court will leave that issue to

the New Mexico courts.  Instead, the Court will grant summary judgment on MMR's first

argument, that MMR was not in the chain of supply for the conduit and the cable tray box

because MMR was a "mere installer."  Thus, the Court will grant the Motion and will dismiss

Plaintiff's Count I strict products liability claim against MMR on that basis.

IT IS ORDERED that DEFENDANT MMR CONSTRUCTORS, INC.'S MOTION FOR

PARTIAL SUMMARY JUDGMENT ON COUNT I – PLAINTIFF'S STRICT LIABILITY

CLAIM (Doc. No. 282) is granted as to Plaintiff's Count I strict products liability claim and a

separate Summary Judgment will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE