UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**GERALD FLOWERS,**

    **Plaintiff,**

**vs.**                                                                                    09-CV-569 JAP/SMV

**LEA POWER PARTNERS, LLC,**
**COLORADO ENERGY MANAGEMENT, LLC**
**J.A. FREE, JR. & COMPANY,**
**AFCO STEEL, LLC,**
**BURNS & ROE ENTERPRISES, INC.,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO.,**

    **Defendants.**
**and**

**LEA POWER PARTNERS, LLC, and**
**COLORADO ENERGY MANAGEMENT, LLC,**

    **Third-Party Plaintiffs,**

**vs.**

**L.P.R. CONSTRUCTION CO. and**
**MMR CONSTRUCTORS, INC.**

    **Third-Party Defendants.**
**and**

**AFCO STEEL, LLC,**

    **Third-Party Plaintiff,**

**vs.**

**J.A. FREE, JR. & COMPANY,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO. and**
**BURNS & ROE ENTERPRISES, INC.**

    **Third-Party Defendants.**

1

**MEMORANDUM OPINION AND ORDER
DENYING AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. Nos. 284 and 285)**

Defendant AFCO Steel, LLC (AFCO) asks the Court to grant summary judgment dismissing the claim for strict products liability against AFCO asserted in PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 165) (Complaint).[1]  Because the ladder from which Plaintiff fell is a product that was manufactured by AFCO, the Court will deny the Motion as to Plaintiff's Count I strict products liability claim.

I.  Background

On May 8, 2008, during the construction of the Steam Turbine Building (STB) at the Hobbs Generating Facility (Facility), Plaintiff was working for subcontractor Turnaround Welding Services as a pipefitter on an elevated steel platform in the STB.  Plaintiff alleges that after ascending the stairs to the platform, he discovered that he had forgotten a tool below.  Instead of using the stairs, Plaintiff used the fixed step-through ladder attached to the platform to descend to the lower level.  As Plaintiff began to descend the ladder, his foot allegedly slipped on an electrical conduit (one-inch pipe) behind the ladder's third rung.  Plaintiff alleges that after he slipped, he was unable to stop his fall using the ladder's side rails, which were constructed of

---

[1] In ruling on AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. Nos. 284) (Motion), the Court has considered AFCO STEEL, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 285), PLAINTIFF'S RESPONSE TO AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 310) (Response); and AFCO STEEL'S REPLY TO PLAINTIFF'S RESPONSE [DOC. 310, FILED 2/14/12] TO AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 325)  (Reply) as well as all exhibits to the Motion, Response and Reply.

angle iron. [2]  Plaintiff also alleges that he was unable to grip the side rail because he hit his hand on the cable tray box abutting the north side rail of the ladder.  Plaintiff fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and allegedly suffered back and neck injuries.

In Count I of the Complaint, Plaintiff asserts a claim for strict liability for the defective design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box.  Plaintiff claims that the ladder, the electrical conduit, and the cable tray box were unreasonably dangerous and defective as designed, manufactured, purchased, and installed.  In Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the ladder, the electrical conduit, and the cable tray box.

The evidence shows that the conduit was located 5.75" from the center of the ladder's third rung from the top. The cable tray box was abutting the north side rail of the ladder. (*See* Green Report Ex. A AFCO Mot. Part. Summ. J. Doc. No. 285.)  The Occupational Health and Safety Administration (OSHA) has promulgated regulations for fixed ladders, which require that the "minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches." 29 CFR § 1926.1053(a)(13).[3]  Thus, the conduit and the cable tray box were within the area required to be free from obstructions under OSHA standards.  The ladder's side rails were constructed of angle iron with the dimensions of 2.5" x

---

[2] In his deposition, Plaintiff testified that his foot slipped on something and that "the only thing that makes sense" was that he slipped on conduit located behind the ladder and he was unable to keep his grip on the side rails due to their angle and size. (Plf. Resp. Ex. H, Flowers Dep. 68:13-69:6; 75:4-10; 166:5-9.)

[3] Defendants, however, have disputed Plaintiff's contention that they are subject liability for violations of OSHA regulations. *See* Proposed JOINT PRETRIAL ORDER at p. 10.

3" x 3/8".  OSHA requires that ladder side rails have an adequate gripping surface. *See* 29 CFR § 1910.27(b)(2) (requiring, "side rails which might be used as a climbing aid shall be of such cross sections as to afford an adequate gripping surface without sharp edges, splinters, or burrs."). Plaintiff has presented evidence from the OSHA website in which an OSHA representative opines that angle iron 2" wide does not afford an adequate gripping surface.  (*See* Letter from OSHA website Plaintiff's Resp. Doc. No. 309 Ex. H) (stating generally that 2" wide angle iron did not provide an adequate gripping surface).  Thus, Plaintiff asserts that the Court can infer the angle iron 3" wide also does not afford an adequate gripping surface.

Plaintiff's claims are asserted against several Defendants.  Defendant Lea Power Partners, LLC (LPP) is the owner of the Facility.  Defendant Colorado Energy Management, LLC (CEM) was the Engineering Procurement and Construction Contractor for the construction of the Facility.  Defendant L.P.R. Construction Co. installed the fixed platform and the fixed ladder.  Defendant MMR Constructors, Inc. (MMR) installed the electric conduit and the cable tray box.  Defendant AFCO supplied the fixed ladder.  Defendant Burns & Roe Enterprises, Inc. (Burns & Roe) designed the ladder.  Defendant J.A. Free & Company, Inc. (Free), provided the shop drawings of the ladder for AFCO.  AFCO contracted with General Iron & Steel to fabricate the ladder.[4]

II. Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[4] The Court dismissed all claims against General Iron & Steel for lack of personal jurisdiction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).  J.A. Free, Jr. & Company has not entered an appearance and has not filed an answer or responsive pleading.

a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

Because the Court's jurisdiction in this case is based on diversity of citizenship, the Court will apply New Mexico substantive law. *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).  If the state's highest court has not addressed a dispositive legal issue, a federal court must determine what decision the state court would make if faced with the same facts and issues by considering state intermediate appellate court decisions, decisions of other states, federal decisions, and the general weight and trend of authority. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988).

New Mexico adopted the principle of strict products liability based on the Restatement (Second) of Torts Section 402A (1965) in *Stang v. Hertz Corp.*, 83 N.M. 730, 732, 497 P.2d 732, 734 (1972). As set out in *Stang*, Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>     (a) the seller is engaged in the business of selling such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>     (a) the seller has exercised all possible care in the preparation and sale of his product, and
>     (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.*

"The purpose behind the strict products liability doctrine is to allow an injured user or consumer to recover against a supplier or manufacturer without the requirement of proving negligence. This purpose is accomplished by imputing liability for an injury caused by a product to the seller of the product, with or without the presence of negligence on his part." *Trujillo v. Berry*, 106 N.M. 86, 88, 738 P.2d 1331, 1333 (N.M. Ct. App.) (citations omitted), *cert. denied*, 106 N.M. 24, 738 P.2d 518 (1987). Under Section 402A, there are three types of product defects: manufacturing defects, design defects, and warning defects. *Fernandez v. Ford Motor Co.*, 879 P.2d 101, 111 (N.M. Ct. App. 1994) (citing *Jiminez v. Dreis & Krump Mfg. Co.*, 552 F. Supp. 301, 303-04 (S.D.N.Y. 1982), *rev'd on other grounds*, 736 F.2d 51 (2d Cir. 1984)). "Strict products liability does not, however, preclude liability against a retailer based upon the alternative ground of negligence of the seller where such negligence can be proved." *Trujillo*, 738 P.2d at 1333. "All parties in the chain of distribution of a defective product are strictly liable." *Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 10, 131 N.M. 87, 33 P.3d 638.

    III. Discussion

        A.  The Ladder Is A Product

In the Motion, AFCO asks the Court to dismiss Plaintiff's Count I strict products liability claim because the ladder at issue is not a "product" for which AFCO can be held strictly liable. The determination as to whether the ladder is a "product" is a question of law. *Livingston v. Begay*, 98 N.M. 712, 652 P.2d 734, 738 (N.M. 1982). However, "product" is not defined in New Mexico's products liability cases, or by the New Mexico uniform jury instructions. *See* NMRA, Civ. UJI Ch. 14 *Products Liability* Introduction (stating that the committee has "attempted no definition of 'product.'"); *Lay v. Vip's Big Boy Restaurant, Inc.*, 548 P.2d 117, 118-119 (N.M.

6

Ct. App. 1976) (holding that a restaurant is not a product), and *Ruiz v. Southern Pac. Co.*, 638 P.2d 406 (N.M. Ct. App. 1981) (holding that plaintiff could not assert strict products liability claim against a railroad because train service is not a product). *Cf. Kaneko v. Hilo Coast Processing*, 654 P.2d 343, 344, 346-351 (Haw. 1982) (holding that a prefabricated building was a product for purposes of strict products liability). In the comments to the Restatement (Second) of Torts, the authors gave some meaning to the term "product" when they noted that the term is not limited to the sale of food for human consumption or other products for intimate bodily use, but also extends to any item sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user. Restatement (Second) of Torts § 402B, comment d.

To support its argument that the ladder is not a product, AFCO cites several cases from other jurisdictions, including an Illinois case, *Martens v. MCL Construction Corp.*, 347 Ill.App.3d 303, 807 N.E.2d 480 (Ill. Ct. App. 2004). In *Martens*, the plaintiff, a construction worker, contended that a steel beam from which he fell was unreasonably dangerous, and Shelco, as the steel fabricator of the steel beam, was strictly liable for his injuries. The Illinois Court of Appeals determined, "[b]ased on policy considerations supporting the strict liability doctrine, courts have consistently held that buildings and indivisible component parts of the building structure itself, such as bricks, supporting beams and railings, are not deemed products for the purpose of strict liability in tort." 807 N.E.2d 480, 493 (Ill. Ct. App. 1st Dist. 2004) (citation omitted). The policy considerations supporting the finding that an item is a "product" are 1) that the seller, by marketing the product for use and consumption, has undertaken and assumed a special responsibility toward any user who may be injured by it; 2) that the user has a right to expect that reputable manufacturers will stand behind their goods; 3) that the burden of accidental injuries caused by products should be placed upon those who manufacture them; and

4) that this burden should be treated as a cost of production against which liability insurance can be obtained. *See generally*, *Martens*, 807 N.E.2d at 493 and 8 Nichols Ill. Civ. Prac. § 143:2.

The *Martens* court cited several cases in which courts generally have held that component parts of buildings are not products for strict products liability purposes. *Compare Hubbard v. Chicago Housing Authority,* 487 N.E.2d 20, 23 (Ill. Ct. App. 1985) (steam pipes incorporated into a building and not easily severable from the building were not a product); *Walker v. Shell Chemical, Inc.*, 428 N.E.2d 943, 946 (Ill. Ct. App. 1981) (guardrail was a component and indivisible part of entire building structure); *Lowrie v. City of Evanston*, 365 N.E.2d 923, 928  (Ill. Ct. App. 1977) (a multi-level, open-air garage was not a product).  *But see Board of Education of City of Chicago v. A, C & S, Inc*., 546 N.E.2d 580, 591 (Ill. S. Ct. 1989) (concluding that asbestos-containing plaster, tile, insulation and fireproofing installed in a building were products because "[t]he fact that these are used in construction and have been installed in a building does not detract from their nature as products separate from the actual structure."); *and Boddie v. Litton Unit Handling Systems, a Div. of Litton Systems, Inc.,* 118 Ill. App. 3d 520, 455 N.E.2d 142, (Ill. Ct. App. 1983) (holding that a conveyor system in post office building was a product).

One case cited by AFCO is *Menendez v. Paddock Pool Construction Co.*, 836 P.2d 968 (Ariz. 1992), in which the Arizona Court of Appeals found that an in-ground pool was not a "product" because it was a structural improvement to realty. *Id.* at 977.  The court analyzed cases from other jurisdictions and concluded,

> policy reasons do not justify characterizing the La Casita pool as a product for purposes of strict liability in tort. The La Casita pool has not been shown to be a standardized model constructed, assembled, or manufactured by a mass-production process analogous to the tract homes in *Schipper* and *Kriegler*. In addition, it has not been shown to be analogous to the prefabricated fiberglass pool designed, manufactured, and distributed for installation by the defendant in *Duggan*, 398 N.W.2d 175.

*Id.* at 977 (citing *Schipper v. Levitt & Sons, Inc.*, 44 N.J. 70, 207 A.2d 314 (1965) (holding that a builder-vendor of mass-produced tract homes could be found strictly liable for injuries resulting from a defect in a water distribution system design, which allowed excessively hot water into a bathroom faucet); *Kriegler v. Eichler Homes*, 269 Cal.App.2d 224, 74 Cal.Rptr. 749 (1969) (extending strict liability to a builder of mass-produced tract homes); and *Duggan v. Hallmark Pool Mfg. Co.*, 398 N.W.2d 175, 178 (Iowa 1986) (holding strictly liable the designer and manufacturer of prefabricated swimming pool)). Generally, courts analyze the policy reasons behind strict products liability in determining whether to impose strict liability:

> Our review of Illinois case law and the policy considerations underlying strict liability persuade us that the question of whether an article is "attached" to real estate is not the ultimate test; rather an analysis in terms of the policy considerations supporting the imposition of strict liability must be employed to determine whether this HVAC constitutes a "product."

*Trent v. Brasch Mfg. Co.,* 477 N.E.2d 1312, 1317 (Ill. App. 1st Dist. 1985) (reversing trial court's dismissal of strict liability claims against defendants in the distributive chain of the HVAC system who had manufactured, designed, distributed, sold, installed and serviced the "electric duct heater," "air handling unit," "control panel" and "fuses" of the HVAC).

Although the fixed ladder at issue here is not a mass-produced item like a prefabricated pool in *Duggan supra*, the ladder is also not the type of item that is fused into a building like the guardrail in *Walker supra* or the bricks, supporting beams and railings suggested in *Martens supra*. Instead, the ladder is more similar to the HVAC system in *Trent*, or the conveyor in

9

*Boddie supra*, and as such, the Court concludes that as a matter of law, the ladder is a "product" for which its manufacturer, AFCO, can be held strictly liable if the ladder was defective and if the defect caused Plaintiff's injury.

### B.  Dispute Regarding Proximate Cause

Under the Restatement (Second) of Torts § 402B, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or a consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user. . . ."  AFCO contends that even if the ladder is considered a product, the Court should dismiss Plaintiff's strict products liability claim because the ladder's side rails, which Plaintiff alleges were defective, were not the proximate cause of Plaintiff's fall.  Under New Mexico law, the plaintiff in a strict products liability case, has the burden of proving all of the elements of strict products liability: 1) that the product was defective; 2) that the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user; 3) that because of the defect the product was unreasonably dangerous to the user; 4) the user was injured or damaged; and 5) that the defective product was the proximate cause of the injury or damage.  *Garner v. Raven Industries, Inc.*, 732 F.2d 112, 114 (10th Cir. 1984) (applying New Mexico law and holding that plaintiff had failed to prove that the defective aspect of an advertising balloon caused his injuries).  NMRA UJI-Civ 13-1424 (2011) states,

> A defective product is "a cause" of injury harm if, unbroken by an independent intervening cause, it contributes to bringing about the injury, and if the injury would not have occurred without it. It need not be the only explanation for the injury, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the defective product must be reasonably connected as a significant link to the injury.

NMRA UJI-Civ. 13-1424 (2011).

Under the standards applied for proximate cause, AFCO, has failed to establish as an undisputed fact that the side rails were not connected as a significant link to Plaintiff's injury. In his deposition, Plaintiff testified,

> Q. As you sit here today, do you believe if you had been able to grip the handrails on the ladder you would have been able to stop yourself from falling?
> A. No, ma'am.
> Q. And why not?
> A. Because I keep playing it through my head over and over and over. It could–maybe. I mean, it's all speculation here, saying what I believe. **Maybe I could have**; maybe I couldn't have, you know. It's kind of hard to replay in my head.

(Flowers Dep. 83:23-84:7 Dec. 2, 2011) (emphasis added).

Plaintiff further testified,

> Q. Did the cable tray cause you to lose your grip on the right-hand rail?
> A. Sir, I don't believe so. I don't know that for sure.
> Q. Because if you look at Exhibit 15 [photograph], that's looking from the bottom up; the edge of that cable tray comes in direct contact with that right-hand rail of the ladder?
> A. Yes, sir.
> Q. So there is no way you could have maintained your grip if you were sliding, if your hands were slipping down that rail; is that right?
> A. That's correct.
> Q. So you must have lost your grip on your right-hand side?
> A. Definitely.

(Flowers Dep. 167:2-16 Aug. 11, 2010.)

> More than a year later in a December 2011 deposition, Plaintiff testified,
>
> Q. . . . Do you believe that the cable tray had anything to do with your fall?
> A. I believe that's what my hand hit.
> Q. Okay. So you believe your hand hit the cable tray while you were falling?
> A. Yes, ma'am, in trying to keep in contact where my hands were at, because my hand is cuffed around the frame, and as it's – as I was falling, surely, I mean, I was – although it probably only took a half a second for me to actually fall so the – you know what I mean? But I'm still trying to grab ahold of something, to do anything. So – and it had to come in contact with it.

(Flowers Dep. 25:1-12, Dec. 2, 2011.) Based on Plaintiff's testimony that he might have been able to stop his fall if he had been able to grip the side rails, the Court concludes that a disputed

11

fact issue exists as to whether the angle iron side rails were one of the causes of Plaintiff's fall.

        C.  Dispute Regarding The Ladder's Defect

Finally, AFCO argues that the undisputed facts show that the ladder was not defective. The Restatement defines a defective condition,

> The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed.

Restatement (Second) of Torts § 402A, comment g. AFCO asserts that the only defect of the ladder itself was due to the negligent installation of the ladder too close to the conduit and cable tray. AFCO contends that the undisputed facts show Plaintiff''s foot slipped on the conduit and Plaintiff's hand hit the cable tray as Plaintiff tried to stop his fall by gripping the side rails. Based on these facts, AFCO contends it is not responsible for Plaintiff's injuries. In other words, AFCO maintains that "subsequent mishandling" of the ladder by either MMR, the electrical contractor, or LPR, the ladder installer, was the reason that the ladder was unreasonably dangerous; thus, Plaintiff's fall cannot be attributed to a defect in the ladder itself. However, a finding that either MMR or LPR created the defective condition that made the ladder unreasonably dangerous, depends on a finding that proximity to the conduit and the cable tray was the only cause of the accident and that the size of the side rails did not contribute to the accident. Plaintiff has presented a factual dispute as to whether the conduit, the cable tray, and/or the side rails contributed to Plaintiff's fall. Therefore, AFCO has failed to show as an undisputed fact that the ladder was not defective.

In sum, the Court rules, as a matter of law, that the ladder is a product. In addition, there is a disputed fact issue as to whether the side rails were a proximate cause of Plaintiff's fall, and

if the side rails were one of the proximate causes of the fall, then a reasonable jury could find that the ladder was defective.

    IT IS ORDERED that AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S STRICT LIABILITY CLAIM (Doc. No. 284) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE