UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**GERALD FLOWERS,**

    Plaintiff,

vs.                                                                 09-CV-569 JAP/SMV

**LEA POWER PARTNERS, LLC,**
**COLORADO ENERGY MANAGEMENT, LLC**
**J.A. FREE, JR. & COMPANY,**
**AFCO STEEL, LLC,**
**BURNS & ROE ENTERPRISES, INC.,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO.,**

    Defendants.
and

**LEA POWER PARTNERS, LLC, and**
**COLORADO ENERGY MANAGEMENT, LLC,**
    Third-Party Plaintiffs,

vs.

**L.P.R. CONSTRUCTION CO. and**
**MMR CONSTRUCTORS, INC.**
    Third-Party Defendants.
and

**AFCO STEEL, LLC,**
    Third-Party Plaintiff,

vs.

**J.A. FREE, JR. & COMPANY,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO. and**
**BURNS & ROE ENTERPRISES, INC.**
    Third-Party Defendants.

1

**MEMORANDUM OPINION AND ORDER**
**DENYING AFCO STEEL, INC. 'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM (Doc. No. 286)**

Defendant AFCO Steel, LLC (AFCO) asks the Court to grant summary judgment dismissing the claim for negligence against AFCO asserted in PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 165) (Complaint).[1]  Because Plaintiff's fall from the ladder was foreseeable to AFCO, as the manufacturer of the ladder, and because there is evidence that the ladder's side rails did not afford an adequate gripping surface as Plaintiff descended the ladder, the Court will deny AFCO's Motion on Plaintiff's Count II negligence claim.

    I.  Background

On May 8, 2008, during the construction of the Steam Turbine Building (STB) at the Hobbs Generating Facility (Facility), Plaintiff was working for subcontractor Turnaround Welding Services as a pipefitter on an elevated steel platform in the STB.  Plaintiff alleges that after ascending the stairs to the platform, he discovered that he had forgotten a tool below.  Instead of using the stairs, Plaintiff used the fixed step-through ladder attached to the platform to descend to the lower level.  As Plaintiff began to descend the ladder, his foot allegedly slipped

---

[1] In ruling on AFCO STEEL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM (Doc. Nos. 286) (Motion), the Court has considered AFCO STEEL, LLC'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM (Doc. No. 287) (Memorandum), PLAINTIFF'S RESPONSE TO DEFENDANT AFCO STEEL INC.'S [sic] MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM AND MEMORANDUM IN SUPPORT [DOCKET NOS. 286 AND 287, FILED 1/17/12] (Doc. No. 309) (Response); and AFCO STEEL, LLC'S REPLY TO PLAINTIFF'S RESPONSE [DOC. 309, FILED 2/14/12] TO AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM [DOCS. 286 AND 287, FILED 1/17/12] (Doc. No. 326) (Reply) as well as all exhibits to the Motion, Memorandum, Response and Reply.

on an electrical conduit (one-inch pipe) behind the ladder's third rung.  Plaintiff testified that his foot slipped on something and that "the only thing that makes sense" was that he slipped on conduit located behind the ladder and he was unable to keep his grip on the side rails due to their angle and size. (Plf. Resp. Ex. H, Flowers Dep. 68:13-69:6; 75:4-10; 166:5-9.)  Plaintiff also alleges that he was unable to grip the side rail because he hit his hand on the cable tray box abutting the north side rail of the ladder.  Plaintiff fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and allegedly suffered back and neck injuries.

In Count I of the Complaint, Plaintiff asserts a claim for strict liability for the defective design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box.  Plaintiff claims that the ladder, the electrical conduit, and the cable tray box were unreasonably dangerous and defective as designed, manufactured, purchased, and installed.  In Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the ladder, the electrical conduit, and the cable tray box.

Plaintiff's claims are asserted against several Defendants.  Defendant Lea Power Partners, LLC (LPP) is the owner of the Facility.  Defendant Colorado Energy Management, LLC (CEM) was the Engineering Procurement and Construction Contractor at the Facility.  Defendant L.P.R. Construction Co. (LPR) installed the fixed platform and the fixed ladder.  Defendant MMR Constructors, Inc. (MMR) installed the electric conduit and the cable tray box.  Defendant AFCO supplied the fixed ladder.  Defendant Burns & Roe Enterprises, Inc. (Burns & Roe) designed the ladder.  Defendant J.A. Free & Company, Inc. (Free), provided the shop drawings of the ladder for AFCO.  AFCO contracted with General Iron & Steel to fabricate the

ladder.[2]

The evidence shows that AFCO entered into an agreement with CEM to provide steel materials for the STB construction project. (Landis Aff. ¶ 2.)  CEM, contracted with Burns & Roe to design the ladder, and AFCO fabricated the ladder in compliance with the design specifications. (Green Report at 9 Mot. Part. Summ. J. Doc. No. 285. Ex. A)  The original plans for the ladder prepared by Burns & Roe called for side rails made of bar stock.  On or about December 8, 2007, Burns & Roe revised the plans, changing the side rail from bar stock to angle iron.  In January 2008, AFCO shipped the ladder from its Colorado facility to the Facility's construction site in Hobbs. (Landis Aff. ¶ 5.)  LPR installed the ladder, and MMR installed the conduit and the cable tray box. The design specifications for the ladder did not include specifications for the electrical components near the ladder, such as the conduit and the cable tray box.  (Motiwala Dep. 86:2-13, 22-23, and 89:12-24.)  The conduit was located 5.75" from the center of the ladder's third rung from the top. The cable tray box was abutting the north side rail of the ladder. (Green Report at 10.)  Regulations promulgated by the Occupational Health and Safety Administration (OSHA) require that the "minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches." 29 CFR § 1926.1053(a)(13).[3]  Thus, the conduit and the cable tray box were within the area required to be free from obstructions under OSHA standards.

AFCO constructed the ladder's side rails using angle iron with the dimensions of 2.5" x

---

[2] The Court dismissed all claims against General Iron & Steel for lack of personal jurisdiction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).

[3] Defendants, however, have disputed Plaintiff's contention that they are subject to liability for violations of OSHA regulations. *See* Proposed JOINT PRETRIAL ORDER at p. 10.

3" x 3/8". OSHA requires that ladder side rails have an adequate gripping surface. *See* 29 CFR § 1910.27(b)(2) (requiring, "side rails which might be used as a climbing aid shall be of such cross sections as to afford an adequate gripping surface without sharp edges, splinters, or burrs."). Plaintiff has presented evidence from the OSHA website in which an OSHA representative opines, in response to a question unrelated to this case, that angle iron 2" wide would not afford an adequate gripping surface. (*See* Letter from Richard Fairfax, Director of OSHA Enforcement Programs to Mr. Richard Eichel, Plaintiff's Resp. Doc. No. 309 Ex. H). Thus, Plaintiff asserts that a fact-finder can infer that these side rails made of angle iron 2.5" x 3" in width do not afford an adequate gripping surface.

      II. Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Because the Court's jurisdiction in this case is based on diversity of citizenship, the Court will apply New Mexico substantive law. *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).

III. Discussion

    A. AFCO's Duty As An Independent Contractor

In order to establish a claim for negligence, a plaintiff must prove four elements: (1) an existing duty of care, (2) breach, (3) proximate cause, and (4) damages. *Lessard v. Coronado Paint & Decorating Center, Inc.,* 2007-NMCA-122, ¶ 27, 142 N.M. 583, 168 P.3d. 155. As a general rule, a construction contractor is liable for the injuries or damages to a third person caused by the contractor's negligence. *Terry v. New Mexico State Hwy. Com'n*, 645 P.2d 1375, 1379 (N.M.1982), *abrogated on other grounds, Coleman v. United Engineers & Construct.,* 878 P.2d 996 (N.M.1994). However, a contractor is not liable to third parties: (1) if the contractor carefully carried out the plans, specifications, and directions of another and those plans, specifications, and directions were not so obviously defective that a reasonable contractor would not follow them; or (2) the owner discovers the danger, or it is so obvious, that the owner's conduct is an intervening cause of the injury. *Id.* In *Terry*, the New Mexico Supreme Court held that a paving contractor was not liable to a motorist who died in an accident on the curve of a highway paved by the contractor. The Court found that the contractor carefully carried out plans, specifications and directions given by the State, which were standard for this type of construction and which were not obviously defective. *Id.*

AFCO contends that, like the subcontractor in *Terry*, it fabricated the ladder according to the specifications given by Burns & Roe requiring side rails made of 2.5" x 3" angle iron. AFCO contends it was justified in relying on these specifications because the specifications were not so obviously dangerous that no reasonable contractor would follow them. However, Plaintiff has shown that the specifications calling for 2.5" x 3" side rails did not comply with OSHA standards and did not afford an adequate gripping surface. In addition, the risk associated with

side rails that have an inadequate gripping surface would be foreseeable to AFCO as a fabricator of ladders.  Even though AFCO followed the plans and specifications, a reasonable fact-finder could conclude that AFCO was not justified in following those specifications. *See Cumming v. Nielson's, Inc.*, 108 N.M. 198, 769 P.2d 732, 735 (N.M. Ct. App. 1988) (stating that breach of duty may be proven by violation of industry standards).

      AFCO counters that it is not subject to OSHA standards because it is not Plaintiff's employer, and that OSHA does not impose civil liability.  However, even though AFCO is not Plaintiff's employer, OSHA standard may be used to define the safety standards required on construction job sites.  *See Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258, 1261 (N.M. 1987) (noting that even though evidence of OSHA violations cannot support negligence per se, evidence is admissible to show violation of standard of care).  AFCO also points to the opinion of one of Plaintiff's experts, Thomas H. Scott, who opined that the ladder's grab rails, located at the top of the ladder allowing the user to step through to the platform, met OSHA standards.[4]  However, Plaintiff is not trying to impose liability under OSHA, but is using the

---

[4] Mr. Scott states in his report,
> The ladder rails and pass through are constructed of two and one-half inch (2 ½") by three inch (3") angle iron.  Flowers claims that this type of construction did not allow him to get a firm hold on the ladder as he began his descent from the platform.  However, the ladder pass-through was equipped with grab handles (hand rails) to provide a hand hold for persons ascending or descending the ladder.  The grab handles would assist in maintaining a three point contact.  The grab handles (hand rails) were constructed of three-eighths inch x two and one-half inch (3/8" x 2 ½") steel bars meeting the requirements of OSHA 29 CFR 1910.23(e)(10).  Additionally, the rungs of the ladder were constructed of three-quarters inch (3/4") diameter solid steel bars on twelve inch (12") centers between rails eighteen inches (18") apart, all in compliance with OSHA 29 CFR 1910.27(b)(1) . . . .  The ladder appears to meet all requirements of OSHA Standards.

(Resp. Ex. E at 5.) (arguing that a proper descent from a ladder requires a person to grip the rungs of the ladder as the person descends).

OSHA standards to prove that AFCO breached the standard of care.  The case cited by AFCO involved an attempt to assert a cause of action under OSHA, and the case is not applicable here. *See Johnson v. Koppers Co., Inc.*, 524 F. Supp. 1182, 1189 (N.D. Ohio 1981).

With the Fairfax letter from OSHA's website and Plaintiff's own testimony, Plaintiff has shown that there is a factual dispute over whether the side rails had an adequate "gripping surface."  Plaintiff has also raised a disputed fact issue that AFCO should have known that the changed plans, calling for 2.5" x 3" angle iron instead of bar stock, created an inadequate gripping surface.  AFCO had a duty to ensure that persons using the ladder had an adequate gripping surface to allow stability when ascending or descending the ladder, and summary judgment will be denied on this issue.

2.  Proximate Cause

Next, AFCO argues that the Court should find that, as a matter of law, the ladder's side rails were not the proximate cause of the accident. New Mexico's uniform jury instructions provide:

> A defective product is "a cause" of injury harm if, unbroken by an independent intervening cause,  it contributes to bringing about the injury, and if the injury would not have occurred without it. It need not be the only explanation for the injury, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the defective product must be reasonably connected as a significant link to the injury.

NM UJI-Civ. 13-1424 (2011).  AFCO contends that Plaintiff's testimony was that he could not have stopped his fall even if he had been able to grip the side rails.  However, Plaintiff testified

that he might have been able to stop himself if he had been able to grip the side rails.[5]  Thus,

Plaintiff has sufficiently sown that the side rails could have contributed to his fall.

---

[5] In his deposition, Plaintiff testified,

> Q. As you sit here today, do you believe if you had been able to grip the handrails on the ladder you would have been able to stop yourself from falling?
> A. No, ma'am.
> Q. And why not?
> A. Because I keep playing it through my head over and over and over.  It could–maybe. I mean, it's all speculation here, saying what I believe.  **Maybe I could have**; maybe I couldn't have, you know.  It's kind of hard to replay in my head.

(Flowers Dep. 83:23-84:7 Dec. 2, 2011) (emphasis added).

Plaintiff further testified,

> Q. Did the cable tray cause you to lose your grip on the right-hand rail?
> A. Sir, I don't believe so. I don't know that for sure.
> Q. Because if you look at Exhibit 15 [photograph], that's looking from the bottom up; the edge of that cable tray comes in direct contact with that right-hand rail of the ladder?
> A. Yes, sir.
> Q. So there is no way you could have maintained your grip if you were sliding, if your hands were slipping down that rail; is that right?
> A. That's correct.
> Q. So you must have lost your grip on your right-hand side?
> A. Definitely.

(Flowers Dep. 167:2-16 Aug. 11, 2010.)

> More than a year later in the December 2011 deposition Plaintiff testified,
>
> Q. . . . Do you believe that the cable tray had anything to do with your fall?
> A. I believe that's what my hand hit.
> Q. Okay. So you believe your hand hit the cable tray while you were falling?
> A. Yes, ma'am, in trying to keep in contact where my hands were at, because my hand is cuffed around the frame, and as it's – as I was falling, surely, I mean, I was – although it probably only took a half a second for me to actually fall so the – you know what I mean? But I'm still trying to grab ahold of something, to do anything.  So – and it had to come in contact with it.

(Flowers Dep. 25:1-12, Dec. 2, 2011.)

In addition, AFCO contends that Plaintiff admitted his right hand hit the cable tray box abutting the ladder's right side rail while Plaintiff was attempting to grip the side rail.  AFCO argues that the positioning of the cable tray box was an "independent intervening cause" of the accident, and that the Court should conclude that, as a matter of law, AFCO is not liable for the Plaintiff's injuries.  It is important to note proximate cause is usually a factual issue for the jury to decide.  *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 34, 134 N.M. 43, 73 P.2d 181. In addition, New Mexico's jury instruction on proximate cause is sufficient for a jury in this case to determine what aspects of the ladder, if any, contributed to Plaintiff's fall.  "A proximate cause of an injury is that which in a natural and continuous sequence produces the injury, and without which the injury would not have occurred." NMRA UJI-Civ. 13-305 (2003).  Presumably, AFCO would have the Court instruct the jury on the meaning of an independent intervening cause, which is defined as an event that "interrupts and turns aside a course of events and produces that which was not foreseeable as a result of an earlier act or omission."  NM UJI-Civ. 1424A (2011).  Plaintiff testified that after his foot slipped on the conduit and while he was falling, he attempted to stop his fall by gripping the side rails, but his right hand hit the cable tray box abutting the right side rail of the ladder:  ". . . in trying to keep in contact where my hands were at, because my hand is cuffed around the frame, . . . [the hand] had to come in contact with [the cable tray box]." (Flowers Dep. 25:4-12, Dec. 2, 2011.)  Based on this evidence, AFCO argues that when Plaintiff hit his hand on the cable tray box, the course of events was sufficiently interrupted, so that the side rail cannot be considered to have "caused" Plaintiff's accident.  However, the fact that Plaintiff's hand his the cable tray box as Plaintiff was trying to break his fall, does not conclusively show that the side rail was not a cause, among other causes, of Plaintiff's accident.  A reasonable fact-finder could conclude that after Plaintiff slipped on the

conduit he attempted to grab the side rail and as he was falling he hit his hand on the cable tray box. Thus, all of these elements-the conduit, the cable tray box, and the side rails, can be considered by the jury as contributing causes of Plaintiff's fall. In addition, under New Mexico's comparative fault and several liability system, the jury will be able to apportion fault among these Defendants by analyzing the complete chain of events that contributed to Plaintiff's fall. *See Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶¶ 15- 19, 127 N.M. 729, 987 P.2d 386 (noting that broad use of intervening cause doctrine to limit liability is inconsistent with New Mexico's system of pure comparative fault), *abrogated on other grounds*, *Herrera v. Quality Pontiac,* 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181.

Based on the evidence regarding the sequence of events that caused the fall, the Court concludes that a rational jury could find that the side rails were one of the proximate causes of Plaintiff's fall. And under New Mexico's comparative fault system, AFCO will be liable only for the damages that the jury determines AFCO's negligence, if any, caused. *See Herrera*, 2003-NMSC-018, ¶ 29 (noting that "Defendant is, therefore, not liable for the percentage of fault attributable to . . . any other tortfeasors, or any comparative fault on the part of Plaintiffs which may have contributed to the accident."). In addition, the Court finds that there is no need in this case to give the jury an instruction on independent intervening cause. *Torres*, 1999-NMSC-029, ¶ 21 (stating, "the  instruction on independent intervening cause is sufficiently repetitive of the instruction on proximate cause and the task of apportioning fault that any potential for jury confusion and misdirection outweighs its usefulness."). Thus, the Court will deny summary judgment on the issue of causation.

IT IS ORDERED that AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S NEGLIGENCE CLAIM (Doc. No. 286) is denied.

_____
SENIOR UNITED STATED DISTRICT JUDGE