UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**GERALD FLOWERS,**

      Plaintiff,
vs.                                                                                       09-CV-569 JAP/SMV

**LEA POWER PARTNERS, LLC,**
**COLORADO ENERGY MANAGEMENT, LLC**
**J.A. FREE, JR. & COMPANY,**
**AFCO STEEL, LLC,**
**BURNS & ROE ENTERPRISES, INC.,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO.,**

      Defendants.
and

**LEA POWER PARTNERS, LLC, and**
**COLORADO ENERGY MANAGEMENT, LLC,**
      Third-Party Plaintiffs,

vs.

**L.P.R. CONSTRUCTION CO. and**
**MMR CONSTRUCTORS, INC.**
      Third-Party Defendants.
and

**AFCO STEEL, LLC,**
      Third-Party Plaintiff,

vs.

**J.A. FREE, JR. & COMPANY,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO. and**
**BURNS & ROE ENTERPRISES, INC.**
      Third-Party Defendants.

1

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTIONS FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES**

Defendants Lea Power Partners, LLC (LPP), Colorado Energy Management, LLC (CEM), MMR Constructors, Inc. (MMR), and AFCO Steel, Inc. (AFCO) ask for summary judgment dismissing Plaintiff's request for punitive damages related to Plaintiff's claims for strict products liability and negligence. The claims stem from an accident in which Plaintiff fell from a fixed ladder during construction of the Hobbs Generating Facility (Facility) in Hobbs, New Mexico. Because Plaintiff has raised a disputed fact issue regarding whether the Defendants' conduct reflects a cavalier attitude toward safety at the Facility and because a 20-foot fixed ladder presents acute safety issues, the Court will deny the motions without prejudice. The three motions at issue are 1) DEFENDANTS LEA POWER PARTNERS, LLC AND COLORADO ENERGY MANAGEMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGE CLAIM (Doc. No. 278); 2) DEFENDANT MMR CONSTRUCTOR, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES (Doc. No. 283); and 3) AFCO STEEL, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S PUNITIVE DAMAGES

CLAIM (Doc. No. 288) (together, Motions).[1]

I. Background

On May 8, 2008, during the construction of the Steam Turbine Building (STB) at the Facility, Plaintiff was working for subcontractor Turnaround Welding Services as a pipefitter on an elevated steel platform in the STB. Plaintiff alleges that after ascending the stairs to the steel platform, he discovered that he had forgotten a tool below. Instead of using the stairs, Plaintiff used the fixed step-through ladder attached to the platform to descend to the lower level. As Plaintiff began to descend the ladder, his foot allegedly slipped on an electrical conduit (one-inch pipe) behind the ladder's third rung. Plaintiff testified that his foot slipped on something and that "the only thing that makes sense" was that he slipped on the conduit located behind the ladder, and he was unable to keep his grip on the side rails due to their angle and size. (Flowers Dep. 68:13-69:6; 75:4-10; 166:5-9.) Plaintiff also alleges that he was unable to grip the side rail because he hit his hand on the cable tray box abutting the north side rail of the ladder. Plaintiff

---

[1] In ruling on the Motions, the Court has considered: PLAINTIFF'S RESPONSE TO DEFENDANT LEA POWER PARTNERS, LLC AND COLORADO ENERGY MANAGEMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGE CLAIM [DOCKET NO. 278, FILED 1/17/12](Doc. No. 316); PLAINTIFF'S RESPONSE TO DEFENDANT MMR CONSTRUCTOR, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES [DOCKET NO. 283, FILED 1/17/12] (Doc. No. 315); DEFENDANT MMR CONSTRUCTORS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES (Doc. No. 330); AFCO STEEL, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S PUNITIVE DAMAGE CLAIM (Doc. No. 289); PLAINTIFF'S RESPONSE TO DEFENDANT AFCO STEEL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S PUNITIVE DAMAGES CLAIM AND MEMORANDUM IN SUPPORT [DOCKET NOS. 288 AND 289, FILED 1/17/12] (Doc. No. 313); AFCO STEEL LLC'S REPLY TO PLAINTIFF'S RESPONSE [DOC. 313, FILED 2/14/12] TO AFCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S PUNITIVE DAMAGE CLAIM [DOCS. 288 AND 289, FILED 1/17/12] (Doc. No. 324) and all exhibits to these documents.

fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and allegedly suffered back and neck injuries.

In Count I of the Complaint, Plaintiff asserts a claim for strict liability for the defective design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box. Plaintiff claims that the ladder, the electrical conduit, and the cable tray box were unreasonably dangerous and defective as designed, manufactured, purchased, and installed.  In Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the ladder, the electrical conduit, and the cable tray box.

Plaintiff's claims are asserted against LPP, the owner of the Facility, CEM, the Engineering Procurement and Construction Contractor at the Facility, MMR, the electrical contractor, and AFCO, the ladder manufacturer. AFCO contracted with General Iron & Steel to fabricate the ladder.[2]  Claims are also asserted against Defendant L.P.R. Construction Co. (LPR), the contractor that installed the fixed steel platform and the fixed ladder, Defendant Burns & Roe Enterprises, Inc. (Burns & Roe), the ladder and steel platform designer, and Defendant J.A. Free & Company, Inc. (Free), the provider of the shop drawings of the ladder for AFCO.

The evidence shows that AFCO entered into an agreement with CEM to provide steel materials for the STB construction project. (Landis Aff. ¶ 2.)  Burns & Roe, designed the ladder, and AFCO fabricated the ladder in compliance with the design specifications. (Green Report at 9 Mot. Part. Summ. J. Doc. No. 285. Ex. A)  The original plans for the ladder prepared by Burns & Roe called for side rails made of bar stock.  On or about December 8, 2007, Burns & Roe revised the plans, changing the side rail from bar stock to angle iron.  In January 2008, AFCO shipped

---

[2] The Court dismissed all claims against General Iron & Steel for lack of personal jurisdiction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).

the ladder from Colorado to the Facility's construction site in Hobbs. (Landis Aff. ¶ 5.)

In early 2008, LPR installed the ladder, and MMR installed the conduit and the cable tray box. It is disputed whether LPR installed the ladder prior to MMR's installation of the conduit and the cable tray box. It is undisputed, however, that the conduit was located 5.75" from the center of the ladder's third rung from the top, and the cable tray box abutted the north side rail of the ladder. (Green Report at 10.) Regulations promulgated by the Occupational Health and Safety Administration (OSHA) require that the "minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches." 29 CFR § 1926.1053(a)(13).[3] Thus, the conduit and the cable tray box were within the area required to be free from obstructions under OSHA standards.

AFCO constructed the ladder's side rails using angle iron with the dimensions of 2.5" x 3" x 3/8". OSHA requires that ladder side rails have an adequate gripping surface. *See* 29 CFR § 1910.27(b)(2) (requiring, "side rails which might be used as a climbing aid shall be of such cross sections as to afford an adequate gripping surface without sharp edges, splinters, or burrs."). Plaintiff has presented evidence from the OSHA website in which an OSHA representative opines in an unrelated context that angle iron 2" wide does not afford an adequate gripping surface. (*See* Letter from Richard Fairfax, Director of OSHA Enforcement Programs, Doc. No. 309 Ex. H). Thus, Plaintiff asserts that a fact-finder can infer the angle iron 2.5" x 3" in width does not afford an adequate gripping surface. Another expert, Thomas H. Scott, opined that the ladder's grab rails, located at the top of the ladder allowing the user to step through to the

---

[3] Defendants, however, have disputed Plaintiff's contention that they are subject to liability for violations of OSHA regulations. *See* Proposed JOINT PRETRIAL ORDER at p. 10.

platform, met OSHA standards.[4]

AFCO disputes the evidence regarding proximate cause. In his deposition, Plaintiff testified,

> Q. As you sit here today, do you believe if you had been able to grip the handrails on the ladder you would have been able to stop yourself from falling?
> A. No, ma'am.
> Q. And why not?
> A. Because I keep playing it through my head over and over and over. It could–maybe. I mean, it's all speculation here, saying what I believe. **Maybe I could have**; maybe I couldn't have, you know. It's kind of hard to replay in my head.

(Flowers Dep. 83:23-84:7 Dec. 2, 2011) (emphasis added).

Plaintiff further testified,

> Q. Did the cable tray cause you to lose your grip on the right-hand rail?
> A. Sir, I don't believe so. I don't know that for sure.
> Q. Because if you look at Exhibit 15 [photograph], that's looking from the bottom up; the edge of that cable tray comes in direct contact with that right-hand rail of the ladder?
> A. Yes, sir.
> Q. So there is no way you could have maintained your grip if you were sliding, if your hands were slipping down that rail; is that right?
> A. That's correct.
> Q. So you must have lost your grip on your right-hand side?
> A. Definitely.

---

[4] Mr. Scott states in his report,
  The ladder rails and pass through are constructed of two and one-half inch (2 ½") by three inch (3") angle iron. Flowers claims that this type of construction did not allow him to get a firm hold on the ladder as he began his descent from the platform. However, the ladder pass-through was equipped with grab handles (hand rails) to provide a hand hold for persons ascending or descending the ladder. The grab handles would assist in maintaining a three point contact. The grab handles (hand rails) were constructed of three-eighths inch x two and one-half inch (3/8" x 2 ½") steel bars meeting the requirements of OSHA 29 CFR 1910.23(e)(10). Additionally, the rungs of the ladder were constructed of three-quarters inch (3/4") diameter solid steel bars on twelve inch (12") centers between rails eighteen inches (18") apart, all in compliance with OSHA 29 CFR 1910.27(b)(1) . . . . The ladder appears to meet all requirements of OSHA Standards.
(Resp. Ex. E at 5.) (arguing that a proper descent from a ladder requires a person to grip the rungs of the ladder as the person descends).

(Flowers Dep. 167:2-16 Aug. 11, 2010.)

In a December 2011 deposition, Plaintiff testified,

Q. . . . Do you believe that the cable tray had anything to do with your fall?
A. I believe that's what my hand hit.
Q. Okay. So you believe your hand hit the cable tray while you were falling?
A. Yes, ma'am, in trying to keep in contact where my hands were at, because my hand is cuffed around the frame, and as it's – as I was falling, surely, I mean, I was – although it probably only took a half a second for me to actually fall so the – you know what I mean? But I'm still trying to grab ahold of something, to do anything.  So – and it had to come in contact with it.

(Flowers Dep. 25:1-12, Dec. 2, 2011.)

II Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).  Because the Court's jurisdiction in this case is based on diversity of citizenship, the  Court will apply New Mexico substantive law.  *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).

II. Discussion

To survive summary judgment on a punitive damages claim, Plaintiff must submit evidence that the Defendants' conduct that was "willful, wanton, malicious, reckless, oppressive,

7

or fraudulent." *McNeill v. Rice Engr. & Operating, Inc.*, 2003-NMCA-078, ¶ 32, 133 N.M. 804, 812, 70 P.3d 794, 806.  A defendant can be liable for punitive damages if he acts with reckless disregard for the rights of the plaintiff, "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless 'utterly fail[s] to exercise care' to avoid the harm." *Id.* (quoting *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 210, 880 P.2d 300, 307 (1994)). *See also Gonzales v. Surgidev Corp.*, 899 P.2d 576, 588 (N.M. 1995) (holding that substantial evidence supported claim for punitive damages where defendant, knowing of risks of blindness attending a specific use of its product and knowing that its doctors under-reported the number of complications, failed to warn patients of well-documented risks of eye-implantation procedure) (citing *Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 14 (N.M. 1994) (affirming an award of punitive damages against defendant due to evidence of negligent installation of a propane conversion system in a car together with evidence of defendant's consistent violation of safety regulations)).

      Plaintiff argues that punitive damages in New Mexico may be based on gross negligence which is shown by violation of a statute, but this is not a correct statement of current New Mexico law.  "Under New Mexico law, punitive damages may not be predicated solely on gross negligence; there must be evidence of an 'evil motive' or a culpable mental state." *Vigil v. Burlington Northern and Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185 (D. N.M. 2007) (Brack, J.); *see also* NMRA UJI Civ. 13-1827 (stating, "[t]he New Mexico Supreme Court in *Paiz* . . . eliminated gross negligence as a basis for an award of punitive damages for contract claims. Following the decision in *Paiz*, the committee recommended that gross negligence be removed as a basis for punitive damages in both contract and tort cases. This recommendation was adopted by the New Mexico Supreme Court in 1998.").

      Defendants argue that Plaintiff has presented no evidence showing that these defendants

acted with reckless indifference to the safety problem arising from the positioning of the ladder or from the material used to make the side rails. According to Defendants, no jury could conclude that Defendants exhibited a conscious disregard for or reckless indifference to workers' safety.[5]

In his Response to the Motion filed by LPP and CEM, Plaintiff first argues that these Defendants failed to follow DNM LR-Civ. 56.1(b) because they did not "refer with particularity" to portions of the record in support of their factual contentions, but instead, Defendants merely quoted Plaintiff's Second Amended Complaint. Plaintiff does not dispute any of the quoted material, but Plaintiff argues that none of the facts recited support Defendants' Motions. Plaintiff asks the Court to strike the LPP's and CEM's Motion as procedurally and substantively defective. However, LPP and CEM argue that Plaintiff has failed to come forward with evidence showing that they acted with the requisite mental state to support punitive damages, and this argument is illustrated by referring to Plaintiff's allegations in the Complaint. Under Fed. R. Civ. P. 56(c)(1)(B), "a party asserting that a fact cannot be . . . disputed must support the assertion by: . . . showing . . . that an adverse party cannot produce admissible evidence to support the fact." LPP and CEM may move for summary judgment by showing Plaintiff's failure to support his punitive damage claim with admissible evidence. Thus, the Court will not

---

[5] It is important to remember that these Defendants are corporate entities. Under New Mexico law, "to incur punitive damages, a corporation must itself be culpable. When a corporate agent with managerial capacity acts on behalf of the corporation, . . . his acts are the acts of the corporation; the corporation has participated. *Albuquerque Concrete Coring Co., Inc. v. Pan Am World Services, Inc.* 879 P.2d 772, 778 (N.M. 1994). However, a corporation may also be liable for punitive damages if its employees' behavior in the aggregate amounts to reckless or culpable behavior, even if the employees are not managerial employees. *See Grassie v. Roswell Hosp. Corp.*, 2011 -NMCA- 024, 150 N.M. 283, 258 P.3d 1075 (upholding punitive damage award against hospital because jury should be allowed to consider nurse's behavior in awarding punitive damages).

strike LPP's and CEM's Motion.

In Plaintiff's Responses to the Motions, Plaintiff lists several facts that Plaintiff contends warrant denial of summary judgment on punitive damages: 1) the facility is subject to the standards promulgated by the Operational Safety and Health Administration (OSHA); 2) the fixed ladder was located too close to the conduit and cable tray box in violation of OSHA and ANSI standards; [6] 3) the ladder's side rails violated OSHA regulations because they did not afford an adequate gripping surface; and 4) Plaintiff's testimony that he slipped on the conduit and was unable to keep his grip because the side rails were made of angle iron. These facts are supported by several experts' reports and Plaintiff's testimony. *See* Resp. Exs. A (Scott Report), Ex. B (Rimkus Report), Ex. D (English Report), Ex. F (Green Report), and Ex. H (OSHA Letter of Interpretation by Fairfax from website).

Plaintiff further asserts that CEM was responsible for the sequence of work during the construction of the Facility; thus, CEM was responsible for the timing of the installation of the ladder and ultimately responsible for the installation of the ladder too close to the conduit and cable tray box. Plaintiff also contends that LPP owned the facility and was also responsible for the dangerous condition presented by the ladder. Plaintiff contends that MMR violated OSHA regulations by installing the conduit and cable tray box too close to the ladder. Alternatively, Plaintiff contends that LPR installed the ladder too close to the conduit and the cable tray box. The timing of the installation of the ladder, the conduit, and the cable tray box is a disputed fact issue.

Plaintiff argues that one or more of these Defendants are culpable for the dangerous

---

[6] American National Standards Institute ("ANSI") is a non-profit organization which promulgates safety standards for thousands of products, including ladders.

condition of the ladder, the conduit and the cable tray box, which violated safety rules. Therefore, summary judgment is not warranted on Plaintiff's punitive damages claim.  Plaintiff cites cases from other jurisdictions in which courts have upheld punitive damages awards for knowing violations of safety regulations.  *See, e.g., Schoenbaum Ltd. Co., LLC v. Lenox Pines, LLC,* 262 Ga. App. 457, 472, 585 S.E.2d 643, 656 (Ga. App. 2003) (denying summary judgment because deposition testimony from an engineer that the work performed under party's supervision was "foolish," "a clear violation of the OSHA standard," and "could kill somebody" was sufficient to support an award of punitive damages).  New Mexico courts consider safety violations as evidence of negligence, but also as evidence of a culpable mental state.  *See Clay*, 881 P.2d at 14.

In addition to considering safety violations, New Mexico courts take into account the degree of danger in deciding whether punitive damages may be allowed.  In *Clay v. Ferrellgas, Inc.*, *supra*, the New Mexico Supreme Court determined that the risk of danger posed by the product or the tortfeasor's conduct is a valid consideration in deciding whether the conduct rises to the level of recklessness necessary to support punitive damages. 881 P.2d at 14.  Thus, "as the risk of danger increases, conduct that amounts to a breach of duty is more likely to establish the requisite culpable mental state to support an award of punitive damages." *Torres v. El Paso Elec. Co.*, 1999-NMSC-099, ¶ 28, 127 N.M. 729, 987 P.2d 386, *abrogated on other grounds*, *Herrera v. Quality Pontiac,* 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181.

> The circumstances define the conduct; a cavalier attitude toward the lawful management of a dangerous product may raise the wrongdoer's level of conduct to recklessness, whereas a cavalier attitude toward the lawful management of a nondangerous product may be mere negligence.

*Clay*, 881 P.2d at 17.  In *Clay*, the court upheld an award of punitive damages  because the

evidence showed the defendant company's employees, who installed a propane tank into an automobile, had routinely violated safety regulations requiring installation of a vapor barrier before a tank was installed and that the company had never filed the requisite forms with the State of New Mexico despite doing more than 100 propane tank conversions. *Id.* at 13.

> In this case [Ferrell's employees] negligently allowed an unsafe vehicle to leave their possession. Further, Ferrellgas allowed its employees to violate state law by mounting propane tanks before installing the vapor barrier and proper venting and authorized or participated in [an employee's] continuing failure to file the proper forms which, had they been filed, probably would have prevented the harm to [plaintiffs]. Given the high risk of harm that accompanies the handling of propane gas, the negligence of [the employees] . . . and regular violation of safety regulations by Ferrellgas amounts to corporate indifference and reckless conduct.

*Id.* 17. Hence, punitive damages are often awarded when the activity at issue is inherently or highly dangerous, and the defendant exhibits indifference to safety measures designed to protect persons engaged in the activity.

"[W]hether work is inherently dangerous is a question of law. . . ." *Saiz v. Belen Sch. Dist.,* 113 N.M. 387, 395-96, 827 P.2d 102, 110-11 (1992) (installing high-voltage lighting system is inherently dangerous). However, in *Gabaldon v. Erisa Mortgage Co.*, 1999 -NMSC-039, ¶ 13,128 N.M. 84, 990 P.2d 197, the New Mexico Supreme Court ruled that a wave pool was not inherently dangerous under a three-prong test:

> 1) the activity must involve an unusual or peculiar risk of harm that is not a normal routine matter of customary human activity; 2) the activity is likely to cause a high probability of harm in the absence of reasonable precautions; and 3) the danger or probability of harm must flow from the activity itself when carried out in its ordinary, expected way, such that reasonable precautions aimed at lessening the risk can be expected to have an effect.

*Id.* "If an activity is a 'common, every-day occurrence,' and the public is familiar with the dangers associated with that activity, the activity is not inherently dangerous." *Id.* ¶ 14.

Although climbing a ladder is a common activity, and the public no doubt is aware that

ladder climbing is risky, Plaintiff's climbing of a 20-foot ladder at a construction site is not common. Therefore, the activity at issue here fits within the first prong. *See Saiz*, (electricity is inherently dangerous); *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 91, 126 N.M. 196, 967 P.2d 1136 (felling large dead trees is inherently dangerous); *but cf. Valdez v. Yates Petroleum Corp.*, 2007 -NMCA- 038, ¶ 15, 141 N.M. 381, 155 P.3d 786 (driving an eighteen-wheeled truck is not inherently dangerous).

As to the second prong, "there must be a high risk or probability of harm in the absence of reasonable precautions." *Id.* ¶ 17. The Court finds that there is a high risk of harm in the absence of reasonable precautions related to the use of a 20-foot tall fixed ladder. Presumably, OSHA has regulations regarding clearance around ladders because reasonable precautions are necessary to safely climb or descend a ladder.

The third prong asks the question: does the risk of harm flow from the activity itself when carried out in an ordinary expected manner or does the harm result from the negligence of a particular actor? *See Enriquez*, 1998–NMCA–157, ¶ 97. No evidence was presented to suggest that Plaintiff was using the ladder in an unusual way. Thus, the situation in which Plaintiff was working was dangerous even when carried out in the ordinary expected manner. Thus, Plaintiff has met this prong.

The Court concludes that this ladder, which was affixed to a steel platform 20 feet above a concrete floor, posed a high degree of risk and harm to its intended and foreseeable users, including Plaintiff. The evidence shows that the size of and material used for the ladder's side rails and the ladder's position too close to the conduit and cable tray box presented two separate safety violations, which would support a finding that the Defendants were recklessly indifferent to the safety of the workers at the Facility. Since there was a heightened risk of injury and

Defendants have presented no evidence regarding specific safety measures taken to ensure that the ladder was properly installed and utilized at the Facility, the Court will deny without prejudice all of the Motions for Summary Judgment on Plaintiff's punitive damages claims. The Court believes that this is a close question. But, the evidence taken in the light most favorably to Plaintiff could lead to an inference by a reasonable jury that these Defendants "had a cavalier attitude toward the lawful management of [a] dangerous activity." *Torres*, 1999-NMSC-099, ¶ 30 (holding that a power conductor, "if negligently installed or maintained, presented a serious risk of injury due to its inherent dangerousness."). However, the Court is denying the Motions without prejudice, and the Court may revisit this ruling at trial if presented by motions made under Fed. R. Civ. P. 50(a)(1).

IT IS ORDERED that

1. DEFENDANTS LEA POWER PARTNERS, LLC AND COLORADO ENERGY MANAGEMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGE CLAIM (Doc. No. 278) is denied without prejudice.

2. DEFENDANT MMR CONSTRUCTOR, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES (Doc. No. 283) is denied without prejudice.

3. AFCO STEEL, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S PUNITIVE DAMAGES CLAIM (Doc. No. 288) is denied without prejudice.

*/s/ James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE