UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**GERALD FLOWERS,**

 **Plaintiff,**

vs.                   09-CV-569 JAP/SMV

**LEA POWER PARTNERS, LLC,**
**COLORADO ENERGY MANAGEMENT, LLC**
**J.A. FREE, JR. & COMPANY,**
**AFCO STEEL, LLC,**
**BURNS & ROE ENTERPRISES, INC.,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO.,**

 **Defendants.**
**and**

**LEA POWER PARTNERS, LLC, and**
**COLORADO ENERGY MANAGEMENT, LLC,**

 **Third-Party Plaintiffs,**

vs.

**L.P.R. CONSTRUCTION CO. and**
**MMR CONSTRUCTORS, INC.**

 **Third-Party Defendants.**
**and**

**AFCO STEEL, LLC,**

 **Third-Party Plaintiff,**

vs.

**J.A. FREE, JR. & COMPANY,**
**MMR CONSTRUCTORS, INC.,**
**L.P.R. CONSTRUCTION CO. and**
**BURNS & ROE ENTERPRISES, INC.**

 **Third-Party Defendants.**

1

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
L.P.R. CONSTRUCTION CO.'S MOTION FOR SUMMARY JUDGMENT
ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL INDEMNIFICATION,
TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc. No. 274)**

Plaintiff Gerald Flowers (Plaintiff) has brought claims for strict products liability and negligence in connection with an accident in which Plaintiff fell from a fixed ladder while constructing the Steam Turbine Building (STB) at the Hobbs Generating Facility (Facility). *See* PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 165) (Complaint). The Court has dismissed Plaintiff's Count I claim against L.P.R. Construction Co. (LPR) for strict products liability. (PARTIAL SUMMARY JUDGMENT FOR L.P.R. CONSTRUCTION CO. (Doc. No. 342).

In the ANSWER OF LEA POWER PARTNERS, LLC AND COLORADO ENERGY MANAGEMENT, LLC TO PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 168) (Answer), Lea Power Partners, LLC (LPP), the owner of the Facility, and Colorado Energy Management, LLC (CEM), the general contractor for the construction of the Facility, have asserted cross claims against LPR, the ladder installer, and MMR Constructors, Inc. (MMR), the electrical contractor, for 1) contribution, 2) traditional indemnity, 3) proportional indemnity, and/or 4) statutory indemnity. (Ans. at 9-14.) LPR has moved for summary judgment asking the

Court to dismiss all of LPP's and CEM's cross claims against LPR.[1]  Because proportional indemnity is not available in New Mexico tort cases, the Court will grant LPR's Motion in part and will dismiss LPP's and CEM's cross claim for proportional indemnification.  In addition, since the Court has dismissed Plaintiff's Count I claim against LPR for strict products liability, the Court will also grant summary judgment dismissing LPP's and CEM's cross claims for contribution and indemnity related to Plaintiff's Count I strict products liability claim.  Because Plaintiff's Count II negligence claim against LPR is still viable, the Court will deny summary judgment and will not dismiss CEM's and LPP's cross claim for indemnity related to the negligence liability, if any, that may be imposed on CEM, LPP and/or LPR. However, since contribution is not available between joint tortfeasors under New Mexico's comparative fault system, the Court will grant summary judgment and will dismiss LPP's and CEM's cross claim

---

[1] In ruling on DEFENDANT LPR'S MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL INDEMNIFICATION, TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc. No. 274) (Motion) and MEMORANDUM (Doc. No. 275), the Court also considered CEM'S AND LPP'S RESPONSE TO LPR'S MOTION FOR SUMMARY JUDGMENT AS TO THEIR CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION AND MEMORANDUM IN SUPPORT (Doc. No. 301) and L.P.R. CONSTRUCTION CO.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS AGAINST LPR (Doc. No. 304).

for contribution related to Plaintiff's negligence claim. [2]

      I. Background

On May 8, 2008, during the construction of the STB at the Facility, Plaintiff was working for subcontractor Turnaround Welding Services as a pipefitter on an elevated steel platform. Plaintiff alleges that after ascending the stairs to the steel platform, he discovered that he had forgotten a tool below. Instead of using the stairs, Plaintiff used the fixed step-through ladder attached to the platform to descend to the lower level. As Plaintiff began to descend the ladder, his foot allegedly slipped on an electrical conduit (one-inch pipe) behind the ladder's third rung. Plaintiff testified that his foot slipped on something and that "the only thing that makes sense" was that he slipped on the conduit located behind the ladder, and he was unable to keep his grip on the side rails due to their angle and size. (Flowers Dep. 68:13-69:6; 75:4-10; 166:5-9.) Plaintiff also alleges that he was unable to grip the side rail because he hit his hand on the cable tray box abutting the north side rail of the ladder. Plaintiff fell approximately 15 to 20 feet to the concrete floor, broke his right calcaneus (heel bone), and allegedly suffered back and neck injuries.

---

[2] The Court has also entered a MEMORANDUM OPINION AND ORDER (Doc. No. 130) granting in part AFCO's Motion For Summary Judgment (Doc. No. 106) on LPP'S and CEM's similar third party claim against AFCO, the ladder manufacturer. In that Memorandum Opinion and Order, the Court denied summary judgment on LPP's and CEM's third party claim against AFCO for traditional indemnification related to Plaintiff's negligence and strict liability claims because AFCO, LPP and CEM all failed to show as an undisputed fact that their conduct was passive in regard to the design and installation of the ladder. The Court also denied summary judgment on LPP's and CEM's third party claim against AFCO for contribution related to the strict liability claims because disputed fact questions remained "regarding each party's respective liability for the allegedly defective design." (*Id.* 12.) However, the Court granted summary judgment dismissing LPP's and CEM's third party claim for proportional indemnification because it is not a remedy available in tort cases. (*Id.* 13.) The same general principles apply here.

In Count I of the Complaint, Plaintiff asserts a claim for strict liability for the defective design and manufacture of the fixed ladder, the electrical conduit, and the cable tray box. Plaintiff claims that the ladder, the electrical conduit, and the cable tray box were unreasonably dangerous and defective as designed, manufactured, purchased, and installed. In Count II, Plaintiff asserts a claim for the negligent design, manufacture, and installation of the ladder, the electrical conduit, and the cable tray box.

Plaintiff's claims are asserted against LPP, CEM, MMR, and LPR. Claims are also asserted against AFCO, the ladder manufacturer and against General Iron & Steel, which contracted with AFCO and fabricated the ladder.[3] Claims are also asserted against Defendant Burns & Roe Enterprises, Inc. (Burns & Roe), the ladder and steel platform designer, and Defendant J.A. Free & Company, Inc. (Free), the provider of the shop drawings of the ladder for AFCO.

The evidence shows that AFCO entered into an agreement with CEM to provide steel materials for the construction project. (Landis Aff. ¶ 2.) Burns & Roe, designed the ladder, and AFCO fabricated the ladder in compliance with the design specifications. (Green Report at 9 Mot. Part. Summ. J. Doc. No. 285. Ex. A) The original plans for the ladder prepared by Burns & Roe called for side rails made of bar stock. On or about December 8, 2007, Burns & Roe revised the plans, changing the side rail from bar stock to angle iron. In January 2008, AFCO shipped the ladder from Colorado to the Facility's construction site in Hobbs, New Mexico. (Landis Aff. ¶ 5.)

In early 2008, LPR installed the ladder, and MMR installed the conduit and the cable tray

---

[3] The Court dismissed all claims against General Iron & Steel for lack of personal jurisdiction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 210).

box. It is disputed whether LPR installed the ladder prior to MMR's installation of the conduit and the cable tray box or vice versa. It is undisputed, however, that the conduit was located 5.75" from the center of the ladder's third rung from the top, and the cable tray box abutted the north side rail of the ladder. (Green Report at 10.) Regulations promulgated by the Occupational Health and Safety Administration (OSHA) require that the "minimum perpendicular clearance between fixed ladder rungs, cleats, and steps, and any obstruction behind the ladder shall be 7 inches." 29 CFR § 1926.1053(a)(13).[4] Thus, the conduit and the cable tray box were within the area required area required to be free from obstructions under OSHA standards.

AFCO constructed the ladder's side rails using angle iron with the dimensions of 2.5" x 3" x 3/8". OSHA requires that ladder side rails have an adequate gripping surface. *See* 29 CFR § 1910.27(b)(2) (requiring, "side rails which might be used as a climbing aid shall be of such cross sections as to afford an adequate gripping surface without sharp edges, splinters, or burrs."). Plaintiff has presented evidence from the OSHA website in which an OSHA representative opines, in an unrelated context, that angle iron 2" wide does not afford an adequate gripping surface. (*See* Letter from Richard Fairfax, Director of OSHA Enforcement Programs, Doc. No. 309 Ex. H). Thus, Plaintiff asserts that a fact-finder can infer the angle iron 2.5" x 3" in width does not afford an adequate gripping surface. Another expert in this case, Thomas H. Scott, opined that the ladder's grab rails, located at the top of the ladder allowing the user to step through to the platform, met OSHA standards.[5]

---

[4] Defendants, however, have disputed Plaintiff's contention that they are subject to liability for violations of OSHA regulations. *See* Proposed JOINT PRETRIAL ORDER at p. 10.

[5] Mr. Scott states in his report,
The ladder rails and pass through are constructed of two and one-half inch (2 ½") by

As mentioned above, the timing of the ladder's installation vis a vis the conduit and the cable tray box is disputed. LPR alleges that in late January 2008, it assembled the fixed platform on the ground floor and then used chain falls to lift the platform into place. After the platform was secured, LPR attached the fixed ladder. LPR alleges that at the time it installed the ladder, MMR had not yet installed the conduit and the cable tray box. However, MMR contends that it installed the conduit and the cable tray box before the ladder was installed. In DEFENDANT MMR CONSTRUCTORS, INC.'S RESPONSE TO DEFENDANT L.P.R. CONSTRUCTION CO.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 307), MMR contends that four witnesses, three MMR employees and one CEM employee, testified that MMR installed the conduit and the cable tray box prior to LPR's installation of the ladder. (*See* Rios Dep. 50:12-25; 51:1-25; 53:1-20; Hathaway Dep. 32:25--33:11; Mason Dep. 24:3-11; Bell Dep. 72:2-7.) MMR employee, Juan Rios, also testified that in order to install the ladder, LPR must have cut a notch in the cable tray box so that the ladder would fit. (Resp. Ex. A, Rios Dep. 52:1-11; 53:9-20.) In contrast, LPR's employee, Matt Meisenbach, testified that when he left the construction site in early February 2008, all of the

---

      three inch (3") angle iron. Flowers claims that this type of construction did not allow
      him to get a firm hold on the ladder as he began his descent from the platform. However,
      the ladder pass-through was equipped with grab handles (hand rails) to provide a hand
      hold for persons ascending or descending the ladder. The grab handles would assist in
      maintaining a three point contact. The grab handles (hand rails) were constructed of
      three-eighths inch x two and one-half inch (3/8" x 2 ½") steel bars meeting the
      requirements of OSHA 29 CFR 1910.23(e)(10). Additionally, the rungs of the ladder
      were constructed of three-quarters inch (3/4") diameter solid steel bars on twelve inch
      (12") centers between rails eighteen inches (18") apart, all in compliance with OSHA 29
      CFR 1910.27(b)(1) . . . . The ladder appears to meet all requirements of OSHA
      Standards.
(Resp. Ex. E at 5.) (arguing that a proper descent from a ladder requires a person to grip the rungs of the ladder as the person descends).

ladders had been installed and that no conduit and no cable tray boxes were installed at that time. (Mot. Ex. M Meisenbach Dep 18:22–19:5; 48:24–49:2.) [6]

Defendants seek to apportion fault among themselves. LPP and CEM have asserted crossclaims against LPR and MMR alleging that these Defendants are liable to LPP and CEM for contribution, traditional indemnity, statutory indemnity, and proportional indemnity related to both Counts of Plaintiff's Complaint. Defendant LPR has asked the Court to grant summary judgment in its favor on all of the crossclaims asserted by LPP and CEM.

II. Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-movant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Because the Court's jurisdiction over this case is based on diversity of citizenship, the Court will apply New Mexico substantive law applicable to Plaintiff's and the

---

[6] In the MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT L.P.R.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. No. 272), the Court granted in part and denied in part LPR's Motion for Summary Judgement. The Court dismissed the Plaintiff's Count I claim for strict products liability against LPR because LPR, as an installer of the ladder, was not in the chain of supply of the ladder. The Court, however, did not dismiss Plaintiff's Count II negligence claim against LPR because disputed facts precluded a ruling that LPR was not negligent in its installation of the ladder.

cross claims.  *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007).

    III. Discussion

        A.  New Mexico Law On Contribution Among Joint Tortfeasors

In New Mexico, pure comparative fault applies to all negligence cases.  *Scott v. Rizzo*, 96 N.M. 682, 684–85, 634 P.2d 1234, 1236–37 (1981) (adopting pure comparative negligence); *Bartlett v. N.M. Welding Supply, Inc.*, 98 N.M. 152, 154–59, 646 P.2d 579, 581–86 (N.M. Ct. App.1982) (abolishing joint and several liability between concurrent tortfeasors), *superseded by statute*, 1987 N.M. Laws ch. 141, § 1, NMSA 1978, § 41–3A–1 (1987).  Following *Scott* and *Bartlett*, the New Mexico Court of Appeals held that "*Bartlett* effectively eliminates any basis for contribution among concurrent tortfeasors." *Wilson v. Galt*, 100 N.M. 227, 231, 668 P.2d 1104, 1108 (Ct. App.1983).  As the court explained in *Wilson*, "[i]f each concurrent tortfeasor is liable only for his respective share of the negligence, no need exists for him to . . . seek contribution from other tortfeasors or to protect himself against having to contribute [to others]." *Id.* The comparative fault doctrine, however, applies only to concurrent tortfeasors who have negligently caused "'a single, indivisible injury[.]'" *Gulf Ins. Co. v. Cottone,* 2006-NMCA-150, ¶ 20, 140 N.M. 728, 148 P.3d 814 (quoting *Payne v. Hall*, 2006–NMSC–029 ¶ 11, 139 N.M. 659, 137 P.3d 599).  Each concurrent tortfeasor is then "'severally responsible for its own percentage of comparative fault for that injury.'" *Id.* (quoting *Payne,* 2006–NMSC–029 ¶ 11). Under the New Mexico Contribution Among Joint Tortfeasors Act. NMSA 1978 § 43-3-1 et seq. (the Act), if a party is found liable in tort in a case in which comparative fault is not applied and the party has paid more than its proportional share of the damages, the party is entitled to contribution from other parties who are also at fault. *Id.* Thus, contribution is available among defendants against which strict products liability claims are asserted.

Because Plaintiff's injuries are indivisible, comparative fault applies among these defendants with respect to any liability for negligence. Thus, as a matter of law, no third party claim for contribution exists with regard to Plaintiff's negligence claim. Therefore, the Court will grant summary judgment in favor of LPR dismissing LPP's and CEM's cross claim for contribution related to Plaintiff's negligence claim.

In New Mexico, joint and several liability still exists for strict product liability claims. *See* NMSA 1978 § 41-3A-1 (1987). In New Mexico products liability cases, the supplier of a product can be held strictly liable for all of the plaintiff's injuries, even if the supplier was without fault. *Budget Rent-A-Car Sys. v. Bridgestone Firestone N. Am. Tire, LLC*, 2009-NMCA-013, ¶ 19, 145 N.M. 623, 203 P.3d 154. Where joint and several liability still applies, the party who is held fully liable may seek contribution from the other tortfeasors. However, even though joint and several liability may be imposed on these Defendants related to Plaintiff's Count I claim for strict products liability, LPP and CEM may seek contribution from LPR only if LPR, in addition to LPP and CEM, can be held strictly liable to Plaintiff.

To be subject to strict products liability, LPR must have been in the "chain of supply" of the ladder. New Mexico has adopted the Restatement (Second) of Torts, § 402A, which imposes strict liability for defective products, not defective services. *Parker v. St. Vincent Hosp.*, 1996-NMCA- 070, ¶ 22, 122 N.M. 39, 45, 919 P.2d 1104, 1110 (Hartz, J.) (upholding dismissal of strict liability claim against hospital for defectively designed surgical implant because the hospital was not in the "chain of supply" of the medical device). *See also Tanuz v. Carlberg*, 1996 -NMCA- 076, ¶ 11, 122 N.M. 113, 116, 921 P.2d 309, 312 (extending *Parker* and holding that physician-surgeon who chose and placed an implant into patient cannot be held strictly liable for defective implant). Recently, the Court ruled that LPR, as an installer of the ladder, is

not in the ladder's chain of supply, and the Court dismissed Plaintiff's Count I strict products liability claim against LPR.  Consequently, LPP's and CEM's cross claim against LPR for contribution related to Plaintiff's Count I strict products liability claim will also be dismissed.

### B. New Mexico Law On Indemnification

New Mexico generally recognizes "both traditional and proportional equitable indemnification." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008–NMSC–067, ¶ 23, 145 N.M. 316, 198 P.3d 342.  "Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer." *Id.* Traditional indemnification applies to strict liability and negligence claims if the indemnitee is a minor part of the supply chain for the product, such as the seller of a finished product. *Budget Rent-A-Car Sys.*, 2009 NMCA 13, ¶ 12; *AMREP*, 893 P.2d at 445.  But, the indemnitee's role in the supply chain must have been passive before that party may recover full indemnification from the manufacturer or another party in the chain of supply of a defective product. *Id.*[7] "[P]roportional indemnification allows a defendant to seek partial recovery from another for his or her fault." *Id.* Thus proportional indemnification is similar to contribution.

LPP and CEM argue that there are genuine issues of fact precluding summary judgment in favor of LPR on the Count II claim of negligence.  LPP and CEM further argue that if LPP,

---

[7] It should be noted that the "passive/active" standard does not apply in strict liability cases when determining the liability to the plaintiff. *Budget*, ¶ 13.  However, the passive/active standard does apply in strict liability cases when a court considers indemnification claims between defendants. *Id.* In addition, the Contribution Among Joint Tortfeasors Act expressly states that it does not affect rights to indemnity. *See* NMSA 1978 § 41-3A-1(F) (stating that "[n]othing in this section shall be construed to affect or impair any right of indemnity or contribution arising out of any contract of agreement or any right of indemnity otherwise provided by law.").

CEM, and LPR are found negligent, LPP's and CEM's negligence was passive, whereas LPR's negligence was active. LPP and CEM assert that as a result, they are entitled to indemnification for all damages, costs and attorney's fees that may be assessed against them for negligence.

In the context of indemnification, active conduct "is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." *AMREP*, 893 P.2d at 443 (citation omitted). Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another. *Id.*[8]

In the Motion, LPR asks the Court to find, as an undisputed fact, that LPP's and CEM's conduct was active while LPR's conduct was passive. However, the parties have disputed several facts surrounding the installation of the ladder. Plaintiff asserts that he fell from the ladder because his foot slipped on the conduit located 5.75" behind the third rung from the top of the ladder. Plaintiff further alleges that the conduit was located too close to the ladder in violation of the OSHA standards requiring a 7" clearance space around the ladder. In addition, Plaintiff alleges that he was unable to grip the side rails of the ladder because they were made of 2.5" x 3" angle iron. According to Plaintiff this surface did not provide an adequate gripping surface as required by OSHA regulations. Finally, Plaintiff contends that he was unable to stop

---

[8] There is a subtle distinction between the situation in which a party fails to discover and remedy a dangerous condition and the situation in which a party discovers a dangerous condition created by another but fails to remedy it. The conduct of the party not discovering the dangerous condition is passive, and that party is entitled to indemnification from the one creating the condition. *Id.* On the other hand, the conduct of the party who does nothing after discovering the dangerous condition is active. That party is not entitled to traditional indemnification from the one creating the condition because to do so "would be to shift the whole burden of loss onto one tortfeasor from another whose improper conduct is fully as odious." *Id.*

himself from falling because his right hand hit the cable tray box located adjacent to the ladder's right side rail, which prevented Plaintiff from maintaining continuous hand contact with the side rail.

Defendant MMR asserts that it installed the conduit and the cable tray box before the ladder was installed. LPR, however, maintains that it installed the platform and ladder before the conduit and the cable tray box were installed. Based on these and other factual disputes, the Court concludes that disputed issues of fact are presented as to whether LPR negligently installed the ladder. LPR's installation, if negligently performed, would constitute active negligence. Therefore, since LPR has not established that, as a matter of law, it was not negligent or if LPR was negligent, its negligence was passive, the Court cannot grant summary judgment in favor of LPR on LPP's and CEM's cross claim for indemnification regarding Plaintiff's negligence claim. Because a reasonable jury could determine that LPR's conduct was active and that LPP's and CEM's conduct was passive with regard to the installation of the ladder, the Court cannot conclude that LPR is entitled to judgment as a matter of law on LPP's and CEM's cross claims against LPR related to negligence. However, since LPR has been found not to have been part of the ladder's chain of supply, LPR is entitled to judgment as a matter of law on LPP's and CEM's indemnification cross claim against LPR related to strict products liability.

Finally, LPR correctly asserts that proportional indemnification does not apply to tort cases. *See generally In re Consolidated Vista Hills Retaining Wall Litigation*, *AMREP Southwest, Inc. v. Shollenbarger Wood Treating, Inc.*, 893 P.2d 438, 441 (N.M. 1995) (*AMREP*). In *AMREP*, the court held that the general contractor could assert a claim against a co-defendant for proportional indemnity because the general contractor was sued only for breach of contract

and breach of warranty.  In that situation, contribution was not available to the contractor. *Id.* at 449.  In this case, Plaintiff has asserted only tort claims and, therefore, proportional indemnity is not available to LPP and CEM.  Accordingly, the Court will dismiss LPP's and CEM's cross claim for proportional indemnification.

    (1)  IT IS ORDERED that DEFENDANT LPR'S MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL INDEMNIFICATION, TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc. No. 274) is granted as to LPP's and CEM's cross claims for contribution against LPR with regard to Plaintiff's strict liability and negligence claims, and a separate Partial Summary Judgment will be entered.

    (2)  IT IS ORDERED that DEFENDANT LPR'S MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL INDEMNIFICATION, TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc. No. 274) is granted as to LPP's and CEM's cross claim for proportional indemnification against LPR, and a separate Partial Summary Judgment will be entered.

    (3)  IT IS ORDERED that DEFENDANT LPR'S MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL INDEMNIFICATION, TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc. No. 274) is granted as to LPP's and CEM's cross claim for traditional indemnification against LPR with regard to Plaintiff's strict products liability claim, and a separate Partial Summary Judgment will be entered.

    (4)  IT IS ORDERED that DEFENDANT LPR'S MOTION FOR SUMMARY JUDGMENT ON LPP/CEM'S CROSS CLAIMS FOR PROPORTIONAL

INDEMNIFICATION, TRADITIONAL INDEMNIFICATION AND CONTRIBUTION (Doc.

No. 274) is denied as to LPP's and CEM's cross claim for traditional indemnification against

LPR with regard to Plaintiff's negligence claim.

_____
SENIOR UNITED STATES DISTRICT JUDGE